[Civ. No. 1742.    First Appellate District.—March 22, 1916.]

## HARRISON H. ROUNTREE et al., Respondents, v. W. W. MONTAGUE et al., Appellants.

ESTATE OF DECEASED PERSON—ORDER SETTING APART HOMESTEAD—QUANTITY IN EXCESS OF STATUTE—FAILURE TO APPEAL—TITLE OF WIDOW.—An order setting apart to the widow of a deceased person as a probate homestead a quantity of land exceeding twenty acres in extent, under the homestead law which then provided that such a homestead should not exceed twenty acres in extent, is not void, as being in excess of the jurisdiction of the court, and where such order has not been appealed from, the title to the homestead under the order is vested in the widow in fee.

ID.—NATURE OF PROBATE PROCEEDINGS.—Proceedings in probate for the settlement of estates of deceased persons are in the nature of proceedings in rem, and judgments therein so far as they relate to the disposition of the property of the estate are binding upon the parties interested.

ID.—JURISDICTION—VALIDITY OF JUDGMENT—ERROR.—The only question to be considered upon the hearing of an application for probate homestead is, did the court have authority to determine the subject matter of the controversy and jurisdiction over the thing proceeded against; and where the court has jurisdiction, mere error in its judgment will not vitiate the decree.

ID.—SPECIFIC DEVISE—HOMESTEAD RIGHT NOT AFFECTED.—The right of the widow to such a homestead is not affected by reason of the fact that the premises out of which it was carved were specifically devised to her for life, in the absence of anything in the will to show that the testator intended the specific devise of a life estate to his wife to be in lieu of any rights which she might acquire under the statutes making provision for a probate homestead to her as his widow.

ID.—NATURE OF HOMESTEAD RIGHT OF WIDOW.—The right of a widow to a probate homestead is an independent right which she has in addition to any other right of property which the law gives her, whether acquired under her husband's will or otherwise.

ID.—SALES OF REAL ESTATE—PAYMENT OF FAMILY ALLOWANCE AFTER MARRIAGE—FAILURE TO APPEAL—VALID ORDERS.—Orders authorizing and confirming sales of real estate to pay the amount of the family allowance accruing subsequent to the marriage of the widow of the deceased, are not subject to attack, where no appeal was ever taken therefrom, and the purchaser of the property at such sales acquires a valid title thereto.

ID.—ORDER FOR FAMILY ALLOWANCE—FRAUD.—An order of sale of real estate of a deceased person is not subject to attack on the ground of fraud and conspiracy in the administration of the estate in keeping such family allowance alive after the widow's marriage, where no proof of such fraud is shown other than by the record itself, from which it appears that the court was fully advised of such marriage, and it is also made to appear that no decision had ever been made, at that time, to the effect that an order for family allowance ceased on the marriage of the widow.

ID.—JUDGMENT—ATTACK FOR FRAUD—ESSENTIALS.—A judgment or decree of a court of competent jurisdiction can be set aside for fraud only when the fraud alleged is shown to be extrinsic or collateral to the matter which was tried and determined.

ID.—SPECIFIC DEVISE—HOMESTEAD—LACK OF ESTOPPEL.—The widow in such a case is not estopped from claiming that she acquired the fee in the homestead premises by virtue of the fact that she took under the will a life estate in another part of the premises, in the absence of anything in the will or otherwise putting her to an election.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

J. A. Cooper, P. L. Benjamin, and Walter H. Linforth, for Appellants.

S. F. Leib, and Edwin A. Wilcox, for Respondents.

LENNON, P. J.—In this action the plaintiffs sought and recovered a judgment quieting their alleged title to a certain tract of land situate in the county of Santa Clara and consisting of some two hundred acres. The plaintiffs are the heirs of Elizabeth Rountree, and their claim of title to the lands in suit is based upon allegations to the effect that they succeeded to the same as the remaindermen mentioned in the last will and testament of one Philip Southworth. The defendant, W. W. Montague, who is in possession of the lands in suit, answering the plaintiff's complaint, disclaimed any interest in a certain designated thirty-two and one-half acres of the whole tract, and affirmatively admitted that the title to such acreage was in the plaintiffs under the terms of the will referred to, but he denied that the plaintiffs have any interest or title in or to any part of the remainder of the lands in suit. The judgment of the lower court was rendered and entered for the plaintiffs, and this appeal is from that judgment and from an order denying the defendant a new trial.

The pleaded and proven facts of the entire case are practically undisputed, and may be substantially stated as follows: Elizabeth Mary Montague, the deceased wife of the defendant, W. W. Montague, was, at the time of her marriage to the latter, the widow of Philip Southworth, to whom she had been married in February, 1856. At that time Southworth was the owner of the land in question, and it was his separate property at the time of his marriage. Upon his marriage and down to the time of his death—which occurred on the thirty-first day of December, 1860, he and his wife resided upon said lands. Southworth left a last will and testament dated April 1, 1858, by the terms of which his widow was appointed executrix, and Joseph C. Vandervoort and George I. Bragg executors. Both the widow and Vandervoort renounced their right to serve. Thereafter, on the third day of January, 1861, the will was admitted to probate and Bragg was appointed

sole executor thereof. By the will Southworth directed that his personal property be sold, and that out of the proceeds thereof his sister, Lydia H. Rountree, should be paid the sum of ten thousand dollars, and his wife the sum of fifteen thousand dollars. The estate proved insufficient to satisfy either of these bequests after the payment of the expenses of administration, and, accordingly, they were not paid. In addition to this bequest to his wife the will of Southworth devised to her a life interest in the lands in controversy, with remainder to her issue, and in the event of no issue, remainder over to the children of Lydia H. Rountree, the sister of Southworth.

On March 12, 1908, some fifty years after the making of the will, Mrs. Southworth (who subsequently became the wife of the defendant) died without issue. The plaintiffs in the action are the children and grandchild of Lydia H. Rountree. Upon ascertaining the fact of Mrs. Montague's death, and before the commencement of this action, the plaintiffs made a written demand upon the defendant W. W. Montague as an individual, and as executor of the will of Elizabeth M. Montague, deceased, for the surrender of the possession to the plaintiffs of the two hundred acres of land in suit. Montague refused to comply with the demand, and thereupon the plaintiffs brought this action.

The refusal of the defendant to comply with the demands of the plaintiffs was based upon the rendition and entry of certain decrees in probate made during the administration of the estate of Philip Southworth, wherein all of the lands in suit excepting the thirty-two and one-half acres (title to which was disclaimed by the defendant) were either segregated and set apart to Southworth's widow as a homestead, or were sold to pay the expenses of the administration of the estate and the debts of the deceased. The portions of the land in suit so sold were purchased by Montague and subsequently by him conveyed to his wife, from whom he now derives his claim of title. The defendant, as an additional source of title, also claims that upon the death of Southworth the entire two hundred acres vested absolutely in his widow under the Homestead Act in force at that time. As a further defense to the action the defendant insists that it is barred either by the statute of limitations or under the doctrine of laches. In opposition to these claims of the defendant the plaintiffs assert and insist that Mrs. Montague, as the surviving wife of South-

worth, took under the terms of the will a life estate in a portion of the premises; and, accordingly, they contend that when Mrs. Montague accepted this life estate she was, under the familiar doctrine that a person cannot take under and against the terms of the same will, precluded from acquiring the fee in any portion of the two hundred acres under the subsequently acquired homestead; and further, that by accepting the life estate under the will she thereby created the relation of life tenant and remaindermen between herself and the plaintiffs, in the entire two hundred acres, and was thereafter forever precluded from converting her life estate in any portion of the premises into a fee, with the resultant destruction of their rights in the estate as remaindermen. It is further urged upon behalf of the plaintiffs that any right or estate beyond the life estate acquired by Mrs. Montague inured to the benefit of plaintiffs as remaindermen; that Mrs. Montague's possession under the will was the only rightful one; and that the plaintiffs, being merely contingent remaindermen, not only had no right during her lifetime to the possession of the premises, but had no cause of action therefor until Mrs. Montague died without issue.

The probate decrees under which the defendant Montague claims title to the lands in suit are assailed by the plaintiffs as being void and ineffectual for any purpose upon several grounds. In this behalf it is asserted that the decree attempting to segregate the homestead was void as being in excess of the probate court's jurisdiction, which excess, it is claimed, appears upon the face of the decree itself; that the probate decrees directing and confirming the sales of certain portions of the property for the purpose of paying the debts and expenses of administration, were in fact had for the payment of Mrs. Montague's claim for family allowance which had accrued after her marriage to Montague, and that said sales were void because of the alleged collusion of the executor and his attorney and Mr. and Mrs. Montague in procuring the sales and decrees to be made for the purpose of paying such claim. In this connection it is argued for the plaintiffs that their right of action for the possession of the lands in suit under these alleged circumstances was not barred by the statute of limitations nor by the doctrine of laches, irrespective of any relationship of life tenant and remaindermen existing between Mrs. Montague and the plaintiffs.

. Under the first of these contentions, viz., that the Montagues were estopped from advancing a claim to a fee in any part of the two hundred acres under the probate decrees after she took the benefit of a life estate under the will, plaintiffs in no wise attack those decrees, but, on the contrary, and for the purpose of their argument, assume them to be valid and free from defect. They base their right to recover, in addition to the claim of fraud (which they also urge in an independent argument against the validity of the decrees), upon the ground that Mrs. Montague's equitable obligations and duties to the remaindermen precluded her from taking advantage of them, and that the defendant, as her representative and successor in interest, is likewise estopped from interposing the bar of the statute.

These are in substance the issues which were presented to the trial court for determination; and they are now before this court for review.

We will first discuss the effect of the decree of the probate court in segregating and setting apart to Mrs. Montague, while she was the widow of Southworth, a probate homestead of 51.98 acres, and also the effect of the decrees ordering and confirming the sales of the two parcels of seventy-eight and thirty-two and one half acres respectively for the payment of claims against the estate of Southworth, and the title acquired thereunder by his widow.

With reference to the probate homestead it will be noted that on the 25th of February, 1861, Mrs. Southworth, by her attorney, J. Alexander Yoell, filed her petition in due form in the probate court for an order setting apart to her a probate homestead. In the petition she recited the fact that she claimed to have a homestead in the whole of the two hundred acres, which had been appraised at fifteen thousand dollars. The reason for the application for the probate homestead was no doubt due to the fact that claims against the estate had been presented far in excess of its value, and that the estate was apparently hopelessly insolvent. Two days after the filing of her petition the probate court made an order setting apart to her, as the widow of Southworth, "so much of said premises in a compact form together with the dwelling-house of said deceased situate thereon, as are of the value of $5,000," and in the same order the court appointed the county surveyor and two other persons to set apart, survey off, and segregate

said homestead out of the premises here in question—the two hundred acres being specifically described in the order.   In May of the same year the surveyors made a report to the effect that they had surveyed and segregated 51.98 acres of the two hundred acre parcel, which report was accompanied by a map describing and locating it, and the report added that the portion so segregated did not exceed in value the sum of five thousand dollars.   Thereafter one J. W. Owen, an attorney appointed by the probate court to represent absent heirs, made and filed his objections in writing to the report of the appraisers upon the ground that the widow could not take the homestead, for the reason that she was given a life estate in the premises under the will, and therefore it would be inconsistent to permit her to take the 51.98 acres as a homestead. No action, it seems, was ever taken upon this objection, further than to transmit it to the superior court for hearing and determination.   After considerable delay—the reason for which is not disclosed by the record—the court, on the fourth day of October, 1862, made an order confirming the report of the appraisers, in which it referred to the former action of the court setting aside the homestead.   Some two months prior to the making of the order last referred to Mrs. Southworth had married the defendant, W. W. Montague, and the court in confirming the order referred to her as "Elizabeth Mary Montague, widow of said Philip Southworth." · The order of confirmation described the premises as contained in the report of the appraisers, and made no change in the homestead boundaries.

As before stated, it is the claim of the defendant Montague that the title to the 51.98 acres vested in Elizabeth Mary Southworth by reason of this decree, and he claims through her thereunder.   Plaintiffs deny that any title was created in the 51.98 acres so segregated and set apart by or under this order, for the reason that the rights of the applicant had lapsed under the general Homestead Act at its date; and for the further reason that, viewed as a decree purporting to segregate a probate homestead under the Probate Act, it was void in two essentials, viz., (1) that it was not set apart to the widow of Southworth, the applicant being married at the time to the defendant Montague; and (2) that the land so segregated was not limited to an area of twenty acres, both of which essentials were required by the statute.

This argument is predicated upon the theory that the probate homestead was not finally set apart until the order confirming the report of the appraisers had been made; and it was upon this theory that the trial court found and concluded that the homestead was set apart under the Probate Act, and not under the act of 1860, which had been repealed.

If the applicant took title under the original order of the probate court, there is no question but that the title vested in her absolutely. At the date of the death of Southworth, and at the time the petition for a probate homestead was filed, the act of 1860 (Stats. 1860, pp. 311, 312) providing for a probate homestead, was in force. Sections 1 and 4 of the act provide for a homestead consisting of a quantity of land, together with the dwelling-house thereon, not exceeding in value the sum of five thousand dollars. When the widow of Southworth filed her petition for a probate homestead, and after the original order was made granting it, and when the appraisers had segregated and set it apart, she was beyond question entitled to a probate homestead under this act. No objection was raised at that time, and none could be raised, as to the sufficiency of her petition. She was then the widow of Southworth and was residing upon the land in question. The act of 1860 contained no limitation as to the quantity of land that might be segregated and set apart, the only limitation at that time being that the value of the land set apart should not exceed the sum of five thousand dollars. The language of the order was that the homestead "be set apart"; and the effect of such order was to vest title thenceforth in the widow; and in our opinion the order confirming the survey and appraisement merely ascertained and fixed the boundaries to which the original order of the court applied.

Irrespective of this question, and assuming, as counsel contends and as the trial court found, that the final order confirming the report was the one under which title vested, and that it was made under the Probate Act limiting a homestead to the widow, and providing that it should not exceed twenty acres in extent, still the fact that the applicant had ceased to be the widow of Southworth at the time the final order was made, though she was such widow at the time of her application and the making of the original order, and that the quantity of land set apart was an amount in excess of that which the act permitted, cannot at this late date deprive her

30 Cal. App.—12

of the benefits she received under the decree of the probate court. The order was never appealed from; and it has been held in numerous cases by our supreme court that an order setting apart a homestead is appealable, and that the right to have it reversed for error is lost by failure to appeal. Proceedings in probate for the settlement of estates of deceased persons are in the nature of proceedings *in rem;* and judgments therein so far as they relate to the disposition of the property of the estate are binding upon the parties interested. (*Kearney* v. *Kearney,* 72 Cal. 591, [15 Pac. 769].)

The only question to be considered upon the hearing of an application for a probate homestead is, Did the court have authority to determine the subject matter of the controversy and jurisdiction over the thing proceeded against? Jurisdiction is the power to hear and determine, and it does not depend upon the correctness of the decision made. The court having jurisdiction, mere error in its judgment will not vitiate the decree. The court, in the matter of the application for the probate homestead under consideration here, had power to make the order, and its decree can only be reviewed by a direct appeal therefrom. It has accordingly been held that an order setting apart to a widow without limitation a part of a farm as a homestead, which was in fact the separate property of the deceased, is erroneous but not void; and if the time for an appeal from the order has expired and no appeal has been taken, the title to the homestead under the order vests in the widow in fee simple absolute. (*Estate of Bette,* 171 Cal. 583, [153 Pac. 949] ; *Gruwell* v. *Seybolt,* 82 Cal. 7, [22 Pac. 839] ; *In re Moore,* 96 Cal. 522, [31 Pac. 584] ; *Estate of Huelsman,* 127 Cal. 275, [59 Pac. 776].)

Nor does the fact that error appears upon the face of the decree alter or change the rule; and there is no merit in the contention that the widow was not entitled to a homestead for the reason that the premises out of which it was carved were specifically devised to her for life. (*Estate of Lahiff,* 86 Cal. 151, [24 Pac. 850] ; *Estate of Vance,* 100 Cal. 425, [34 Pac. 1087] ; *Estate of Firth,* 145 Cal. 236, 239, [78 Pac. 643] ; *Estate of Huelsman,* 127 Cal. 275, [59 Pac. 776].) There is nothing in the will of Southworth to show that he intended the specific devise of a life estate to his wife to be in lieu of any rights which she might acquire under the statutes making provision for a probate homestead to her as his widow. The right

of a surviving wife to a probate homestead is an independent right which she has in addition to any other right of property which the law gives her, whether acquired under her husband's will or otherwise (*Estate of Firth,* 145 Cal. 236, [78 Pac. 643]) ; and the power of Southworth to create a life estate in or to any part of his property was subject and subordinate to the right of the widow to a homestead (*Sulzberger* v. *Sulzberger,* 50 Cal. 385).

We come now to a consideration of the legal effect of the sales in probate of those portions of the lands in controversy that were sold in payment of debts, consisting of two parcels of the two hundred acre tract, viz., one of 78.57 acres, and the other of 35.50 acres.

The theory of the plaintiffs in attacking these sales is that had the late Mrs. Montague not insisted upon the payment of the family allowance accruing subsequent to her marriage, the sales would have been unnecessary. Assuming this to be true (although the record does not support this contention), no appeal was ever taken from the orders granting the family allowance, or from the orders authorizing or confirming the sales made for the purpose of the payment of debts of the estate, of which the amount due for family allowance was but a part. What we have said concerning the decree setting apart a probate homestead applies with equal force to the decrees confirming the sales. If any errors were committed in the granting of the same, appropriate action should have been taken at the time of their making, and failing in this the effect of the orders cannot now be assailed. (*Estate of Nolan,* 145 Cal. 559, [79 Pac. 428]; *Tobelman* v. *Hildebrandt,* 72 Cal. 315, [14 Pac. 20].)

The matter of the necessity of the sale was shown in the petition, and such necessity was a matter for the court's determination.

It must be held, therefore, that the title that Mrs. Montague thus acquired to the three hereinbefore mentioned portions of the premises in controversy divested the contingent remaindermen of any interest therein, unless it can be said that such title was founded in fraud and conspiracy, as alleged by the plaintiffs.

The charge of fraud is rested primarily upon the fact that the award of the family allowance to Mrs. Montague was made after her marriage to the defendant Montague. In sup-

port of the charge of fraud and conspiracy it is argued that the record of the administration of the estate of Southworth shows upon its face that the executor, his attorney, and the defendant Montague were all guilty of collusion with the life tenant to defeat the remaindermen, when they recognized her demand for a family allowance after she had ceased to be the widow of Southworth. The fact that the family allowance was kept alive after her marriage to Montague does not tend in itself to prove the fraud and conspiracy claimed, for at that early time no decision had ever been rendered by our supreme court to the effect that an order for the payment of family allowance ceased upon the marriage of the widow. Moreover, as opposed to the charge of fraud is the significant fact that the marriage of Mrs. Montague was not concealed from the probate judge making the order. To the contrary, it affirmatively appears that the order was made with full knowledge of this fact, for she is referred to therein as the wife of Montague. As we have previously indicated, no witnesses were called to substantiate the charge of fraud or conspiracy set forth in the plaintiff's complaint; and if there is any foundation for those charges and the findings of the court supporting them, it must appear from the probate records of the Southworth estate which are before us. No other evidence of any kind of fraud was offered to show that either the widow or her attorney ever willfully, wrongfully, and fraudulently conspired to acquire title in fee simple to the lands in controversy. Alleged suspicious circumstances without number appearing, it is claimed, upon the face of the probate record and showing fraud, are enumerated in the briefs of counsel for the plaintiffs, and from these it is argued that fraud is conclusively shown. But fraud when charged must be clearly proven; and we see no force in the deductions made by counsel for plaintiffs from the record of the administration of the estate of Southworth, and in our opinion no foundation exists for the inferences drawn therefrom and upon which the charges of fraud and conspiracy are based. It would be an idle, endless, and ineffectual task to narrate in detail and then discuss the many circumstances relied upon to support the charge of fraud and conspiracy. It will suffice to say that beyond any question, as the widow of Southworth, Mrs. Montague cannot be condemned for procuring unto herself every benefit and protection from the estate of Southworth which

the law gave her. This she had a perfect legal right to do.
Both a widow's claim to family allowance and a probate home-
stead are strongly favored in our law. (*In re Lux,* 100 Cal.
593, 603, [35 Pac. 341]; *Estate of Welch,* 106 Cal. 427, [39
Pac. 805]; *Estate of Cowell,* 164 Cal. 636, [130 Pac. 209].)
The estate originally left by Southworth was not a large one,
and indeed it appeared to be hopelessly insolvent. Under
these circumstances it may be suggested that very little motive
existed for the perpetration of the fraud and conspiracy
charged to the defendant Montague and his wife. Especially
is this so when we stop to consider that the interest of the par-
ties against whom the alleged fraud was directed could never
receive any benefit until the death of Mrs. Montague, who was
at that time a young woman, and then only in the event that
she should die childless.

In short, we are of the opinion that the finding of the trial
court, that the defendant Montague and others fraudulently
conspired to defeat the interest of the remaindermen, is with-
out support in the evidence. Moreover the fraud charged was
based upon facts that are clearly apparent from the record
itself and only from the record. This is not the character
of fraud which will justify the setting aside of judgments
and decrees. It was not extrinsic or collateral to the questions
examined or determined upon the hearing of the petitions for
the orders. A judgment or decree of a court of competent
jurisdiction can be set aside for fraud only when the fraud
alleged is shown to be extrinsic or collateral to the matter
which was tried and determined by such court. (*Hanley* v.
*Hanley,* 114 Cal. 693, [46 Pac. 736].) Instancing what ex-
trinsic fraud consists of, our supreme court has said that it
may result from (1) keeping the unsuccessful party away
from the court by a false promise of a compromise; (2) pur-
posely keeping him in ignorance of the suit; (3) where an
attorney fraudulently pretends to represent a party and con-
nives at his defeat; and (4) being regularly employed, cor-
ruptly sells out his client's interest (*Pico* v. *Cohn,* 91 Cal. 129,
[25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac.
537]). In instances of this character the defrauded party is
prevented by the act of his adversary from having a trial. No
such situation was presented by the evidence in the present
case. The claim of fraud now urged could and should have

been litigated at the time of the hearing of the various decrees in controversy.

Equally untenable is the claim of plaintiffs that the devise of a life estate in the premises was a specific devise, and that therefore Mrs. Montague was estopped—and likewise the defendant Montague—from claiming that after she took a life estate in any part of the premises under the will she acquired the fee in the area segregated as a homestead against the will. Neither by the terms of the will nor otherwise was the widow expressly put to an election, nor can any direction to make an election be implied therefrom. In the very recent case of the *Estate of Whitney,* 171 Cal. 750, [154 Pac. 855], it is said: "The right of testamentary disposition and the right of beneficiaries to take under the will are alike statutory, and are both subject to the power of the court having jurisdiction of the estate to make a provision for the support of the widow (or minor children) out of the estate (*Estate of Bump,* 152 Cal. 274, [92 Pac. 643]). A family allowance is in this respect analogous to a probate homestead, which, it has been held, may be ordered out of property specifically devised (*Estate of Huelsman,* 127 Cal. 275, [59 Pac. 776])." While this case recognizes the right of a testator to so draw his will as to put his widow to an election, no such right was attempted to be exercised in the will under consideration here. Moreover, there is no evidence in the record that the widow ever entered into possession of any part of the premises as a life tenant under the will or that she held possession as such. If she was put to an election under the law, she certainly exercised it and took under the law and not under the will immediately following the death of her husband, when she instituted proceedings to gain a homestead and secure a family allowance. The fact that the remaining portion of the tract, consisting of thirty-two and one-half acres, was attempted to be distributed to her under what seems to be conceded a void decree of distribution, does not operate as an estoppel against her. At that time, according to the testimony, she believed that she had acquired the entire premises under the homestead and the decree of sale. The finding that she took a portion of the premises under the will is contrary to and inconsistent with the evidence adduced upon the entire case.

The conclusion which we have reached upon the question immediately under consideration renders it unnecessary to dis-

cuss and decide the question of the statute of limitations or the doctrine of laches; and likewise and for the same reason we are not called upon to discuss and decide the question of the right of succession to the conventional homestead alleged to exist in favor of the widow as surviving wife of Southworth.

From what we have said it follows that the plaintiffs as a matter of law have no title to or interest in any part of the land in suit except the thirty-two and one-half acres to which disclaimer is made.

The judgment and order appealed from are reversed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 18, 1916.