[Civ. No. 2909.   Fourth Appellate District.—January 7, 1941.]

In the Matter of the ESTATE OF FREDERICK JAY ALLEN, Deceased.   HELEN B. ALLEN, as Administratrix, etc., Respondent, v. HARVEY D. ALLEN et al., Appellants.

Atherton & Atherton and A. T. Procopio for Appellants.

Adam Thompson and Renwick Thompson for Respondent.

BARNARD, P. J.—This is an appeal from a decree approving certain accounts of the administratrix of this estate, approving and directing the payment of certain amounts as family allowance to the surviving widow, fixing and allowing compensation for the administratrix and her attorneys, both ordinary and extraordinary, and classifying and directing the payment of claims against the estate.

Frederick Jay Allen, who died on September 16, 1936, had, for some twenty years, owned and operated a distributing business for dairy products. The principal assets of the estate consisted of real estate, buildings and equipment used in this business, including five retail routes.

His widow was appointed special administratrix immediately upon his death and general letters of administration were thereafter issued to her. On December 23, 1936, an order was entered authorizing and directing her to continue the business, which she did until it was sold in September, 1939. In the operation of the business the administratrix purchased dairy products and sold them at both retail and wholesale. The business was run at a profit until August,

1938, after which, due to a ''milk war'', it was operated at a loss until it was sold. Altogether, in these operations the administratrix accounted for receipts in excess of $335,000. The two appellants here furnished dairy products to the administratrix during these operations, being paid in part from time to time but leaving unpaid balances.

On June 11, 1937, the appellant Harvey D. Allen filed a petition asking to have the assets of the estate sold, and a family allowance reduced from $200 to $100 a month. This petition was never presented to the court for the reason that the said appellant entered into a written agreement with the administratrix, pursuant to which she gave him her personal notes for $10,500, part of which was secured by a mortgage, and paid off a note for $5,000 owed by the deceased upon which Harvey D. Allen was jointly liable.

In March, 1939, the administratrix filed her second annual report to which objections were filed by appellant Harvey D. Allen with a petition asking that the administratrix be compelled to sell and dispose of the assets. Early in May, the court continued these matters and directed that the operation of the business be continued for a further 90-day period. On August 15, 1939, the court entered an order directing the administratrix to sell the assets of the estate and thereafter the same were advertised and sold at public auction to the appellant Harvey D. Allen for a price much less than that for which they had previously been appraised. Thereafter, the administratrix filed a third and final account, to which objections were filed, and in due course the order was made from which this appeal was taken. The sale of the assets of the estate, after paying a mortgage lien, left an amount which is entirely inadequate to cover the debts and claims against the estate.

Appellants' main contention is that their claims for dairy products furnished during the operation of the business by the administratrix are obligations necessarily incurred in the care and preservation of the assets of the estate, that, as such, they are expenses of administration and preferred claims, and that the court erred in holding to the contrary.

The unauthorized operation of a business by an administrator of an estate was not considered binding on the estate and imposed a liability upon the administrator for any debts thus incurred. (*In re Rose,* 80 Cal. 166 [22 Pac. 86] ; *Estate*

*of De Rome,* 175 Cal. 399 [165 Pac. 919].) By an amendment adopted in 1929, now found in section 572 of the Probate Code, the court was empowered to authorize an administrator to continue the operation of a decedent's business. As pointed out in *Estate of Smith,* 16 Cal. App. (2d) 239 [60 Pac. (2d) 574], this amendment, while it enlarged the powers of the representative of an estate, "did not have the effect of creating a lien upon the assets of the estate to enforce the payment of obligations incurred on that account as preferred claims". In that case, the decedent died shortly after the above-mentioned amendment became effective. The court authorized the executors to continue the operation of the decedent's farming business. A bank having loaned money for that purpose contended that the money thus borrowed and used by the executors was used for the purpose of preserving the property of the estate and should be classified as "expenses of administration", with the result that it was a preferred claim as to the executors, and that the bank was entitled to subrogation to such rights and the benefit of that lien. It was held that this contention was without merit; that while the rule is that administrators who advance their own money for the necessary purpose of preserving the property of the estate are entitled to a preference in the repayment thereof, the executors had not used their own money in carrying out the farming enterprise; that the money thus loaned had been loaned to the estate and not to its representatives; that the debt there in question should be classed "as an ordinary debt or obligation of the estate, and not as current expenses of administration, exactly the same as though the loan had been made to the decedent for the same purpose before her death"; and that the executors were entitled to no preference with respect to said claim to which the bank could be subrogated. The court then pointed out the danger of injustice to heirs and other creditors in permitting such a preference and stated that such a rule of law should not be declared "in the absence of clear statutory provisions to that effect."

The principles and reasoning of that case are applicable here and we can see no difference in principle between loaning money to be used in the continued operation of a business and furnishing goods on credit for the same purpose. Regardless of any other consideration, the administratrix here

had not used her own money or credit in carrying on this business, at least insofar as appellants' claims are concerned, and the credits under which appellants claim were given to the estate and not to the administratrix.

■ ''Expenses of administration'', within the meaning of the statutes giving preference thereto, now section 950 of the Probate Code, have always been understood as referring primarily to the costs and expenses of the probate proceedings themselves, and which have arisen because of the necessity of probating the estate. Certain obligations are imposed by law upon the administrator, because of which he has been allowed to claim a preference for money he has necessarily expended in preserving the property of the estate, including taxes, assessments, insurance, repairs, cost of necessary assistance, and many other such things. (*Ludwig* v. *Superior Court*, 217 Cal. 499 [19 Pac. (2d) 984]; *Estate of Smith, supra.*) Such a preference, as an expense of administration, has not been allowed to outsiders who furnished such things without being under an obligation so to do. (*Estate of Hincheon*, 159 Cal. 755 [116 Pac. 47].) In that case, even a devisee of an uncompleted house was held not to have a preferred claim for expenses she incurred in protecting the house from possible injury, although such an expense would have been given a preference if it had been incurred by the executors. In *Quigley* v. *Nash*, 1 Cal. (2d) 502 [36 Pac. (2d) 112], a widow applied for letters of administration a week after her husband's death, having in the meantime taken charge of his business. Later, at her request, another was appointed the administrator of the estate. The court held she was entitled to a preference with respect to two items ''insignificant in amount'' which were incurred in the conduct of the business of the decedent after his death, it having been found that these expenditures were necessary ''for the preservation of the property'' of the estate. Under such circumstances the court held that these claims were such as would have been entitled to preference if made by an administrator and that they should be allowed as preferred charges against the estate. We find nothing in that case which conflicts with the views above expressed and the Supreme Court later denied a hearing in *Estate of Smith, supra.*

■ We think that such claims as these, for goods sold on credit to a business being continued under order of court,

are not properly to be classed as expenses of administration either under section 572 of the Probate Code, authorizing the making of such an order, or under section 950 giving the order in which debts, expenses and charges against an estate are to be paid. Section 572 does not specifically provide for such a preference and should not be so construed. (*Estate of Smith, supra.*) While the effect of that section is to make claims arising under such circumstances a charge against the estate rather than one against the administrator, no lien or preference is created thereby. In 1931, two years after that provision was first adopted, the various provisions of the Code of Civil Procedure in connection with the payment of charges against an estate were placed altogether in section 950 of the Probate Code, which begins ''The debts of the decedents, the expenses of administration and the charges against the estate must be paid in the following order''. Then follow nine items, the first of which is ''expenses of administration'' and the last ''all other demands against the estate''. The first clause of the section contains a new element: ''Charges Against the Estate'', which is distinguished from debts of the decedent and expenses of administration. It is not unreasonable to believe that one reason for thus distinguishing between charges against the estate and expenses of administration was the very fact that the law had recently been changed to permit an order of court authorizing the continuance of a decedent's business and to care for claims which would naturally arise from such operation, which are quite different from those theretofore recognized as expenses of administration and which logically and reasonably should not be considered as such expenses, for which the administrator had always been entitled to a preference.

The purpose of the statute permitting a continuance of the business upon order of court would seem to be largely to add to the assets of the estate, directly or indirectly, through such operation. In practical effect it is no more than an attempt to improve the property, as distinguished from preserving it, within the meaning of the decisions holding that the administrator is entitled to a preference with respect to money expended for the preservation of the estate. The cost of an improvement to an estate has never been allowed as an expense of administration. (*Estate of Hincheon, supra.*)

-. Persons selling goods to a business thus being conducted by an estate are naturally in about the same position as those selling goods to the owner before he died. They rely upon the success of the business and the assets of the owner or his estate, and no real reason exists for giving a preference to those selling goods after his death over those who sold before that event. There is a difference between expenses incurred during administration and expenses of administration, within the meaning of section 950 of the Probate Code. While debts contracted in continuing such a business are proper charges against an estate, we think the statutes should not be so extended by judicial interpretation as to constitute them expenses of administration and that they should, under the provisions of section 950 of the Probate Code, be considered and treated as other demands against the estate. We think the purpose of the legislature, in adopting the provisions here in question, was to permit the business of a decedent to be continued upon the order of and under the direction of the court for such benefits as might accrue to all concerned, thereby relieving the administrator of the personal liability theretofore existing in such a case, but that it was not the intention to give to those advancing credit to the business thus continued a preference over other creditors who in many cases, if not in most, may have contributed just as much or more to the assets in the hands of the administrator.

The appellants further contend that this estate was insolvent at all times, that the payment of a family allowance was therefore limited to one year (sec. 680, Prob. Code), and that the court erred in approving and ordering payments of the family allowance up to the date of the decree appealed from. The order for a family allowance was entered on December 2, 1936, more than two months before an inventory and appraisement was filed. It is argued that this estate was at all times insolvent. The trial court held to the contrary .upon conflicting evidence and this finding cannot be disturbed.

Moreover, the original order for a family allowance had become final and remained in force until it was directly attacked or steps taken to set it aside. While at the hearing upon the final account the appellants objected .to certain payments upon the family allowance upon the ground of the insolvency of the estate, which then appeared, they had not theretofore moved to set aside the order. They had the right

to seek a modification or change of the order as soon as they discovered the estate was insolvent, but any such modification or change could not operate retroactively. (*Estate of Bell,* 131 Cal. 1 [63 Pac. (2d) 81, 668] ; *Estate of Houston,* 205 Cal. 276 [270 Pac. 939, 60 A. L. R. 730] ; *Estate of Monge,* 25 Cal. App. (2d) 235 [77 Pac. (2d) 290].)

Finally, it is charged that the court erred in fixing the fees of the administratrix and of her attorneys, both ordinary and extraordinary. The court fixed the ordinary fees at the statutory rate based upon the first inventory filed in February, 1937. On September 11, 1939, another inventory was filed with a still higher appraisement of the property, but in that same month the main assets were sold at a sale forced by the appellants for less than half of their appraised value. The statutory fee allowed to the administratrix was $924.60, and the same amount to her attorneys. The court also allowed the administratrix $1800 as extraordinary fees, and her attorneys $500 on that account.

The allowance of the ordinary fees based upon the inventory valuation under these circumstances was improper. (*Estate of Fernandez,* 119 Cal. 579 [51 Pac. 851] ; *Estate of Aldersley,* 174 Cal. 366 [163 Pac. 206] ; *Estate of O'Connor,* 200 Cal. 646 [254 Pac. 269].) However, it would appear that certain profits were made in operating the business during the first two years, which became a part of the estate and which should be taken into consideration in fixing the ordinary fees.

The appellants further contend, in this connection, that no extraordinary fees should have been allowed because the operation of this business turned out to be unsuccessful and the estate finally became insolvent. These facts are not determinative and extraordinary fees should be based upon the amount of extra work required, one element, as provided in the statute, being the continued operation of the business. In view of the situation as disclosed by the record now before us, it would appear that any error in fixing the extraordinary fees, as far as the attorneys are concerned, was in fixing them too low. The entire matter of these fees, ordinary and extraordinary, should be returned to the trial court to be redetermined in accordance with the law and the facts.

That part of the decree appealed from which fixes the fees of the administratrix and her attorney, ordinary and ex-

traordinary, is reversed. The remainder of the decree is affirmed. Each party to pay his own costs on appeal,

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 7, 1941.