[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 226 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 227 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 228 
This is an appeal from an "Order Denying Petition for Modification of Family Allowance."[1]
 The Record
Vincent J. Murphy (hereinafter referred to as decedent), died intestate on July 20, 1960, leaving surviving him a widow and two minor children. His widow (hereinafter referred to as appellant), was appointed administratrix of his estate (hereinafter referred to as the Murphy estate). On January 20, 1961, and before the inventory was filed, the probate court, upon petition of appellant, made its order granting her a family allowance in the sum of $750 per month for the maintenance of said widow and minor children, beginning from the date of death of the decedent, and continuing until the further order of court. On August 30, *Page 229 
1961, an inventory and appraisement of the estate was filed showing the value of the estate to be $246,994.97. Subsequently, and on June 13, 1962,[2] appellant, as administratrix, filed her first account and report and her petition for a partial distribution of the estate.
Thereafter, on June 22, and prior to the hearing of said account and petition, Wells Fargo Bank (hereinafter referred to as the Bank), as executor of the Last Will of Margaret Winifred Kyle (hereinafter referred to as Mrs. Kyle), filed an action in the superior court against appellant in her individual capacity and as administratrix of the Murphy estate. The complaint alleged that the assets inventoried in the Murphy estate were obtained by decedent from Mrs. Kyle, his aunt, by the use of undue influence at a time when he stood in a confidential relationship to her. The Bank prayed that a trust be impressed upon the claimed assets of the Murphy estate and that they be awarded to the Kyle estate in specie. The Bank sought a preliminary injunction prohibiting appellant from disposing of any of the assets of the Murphy estate claimed by it, pending a final determination of its contention that such assets were not the property of the Murphy estate, but belonged to the Kyle estate. An order to show cause why a preliminary injunction should not issue was set for hearing on July 2, and a preliminary injunction was issued on July 3, prohibiting appellant in her capacity as administratrix from transferring any assets or funds out of or from the Murphy estate. The said preliminary injunction contains a provision, apparently based upon a stipulation, that appellant could, without prejudice to the position of the parties, receive a family allowance in the sum of $1,000 for herself and her minor children, and that for "that purpose" she was "at liberty" to petition the probate court for an order increasing the family allowance from $750 to $1,000 per month.[3]
On July 24, appellant filed, in the probate proceedings, her petition for modification of the family allowance, seeking to *Page 230 
increase such allowance for herself and her children from $750 to $1,000 per month. The petition recited that the sum of $1,000 is a reasonable allowance and "is necessary for the maintenance of petitioner and her minor children, according to her circumstances." The hearing of said petition was set for August 8. In the meantime, and on August 4, appellant remarried. On August 8 the probate court made its order that there be paid to appellant the sum of $1,000 per month beginning on July 1, and to continue until the further order of the court "as and for a family allowance." The probate court noted in said order, by way of recital, the provisions of the aforesaid preliminary injunction, and found that the petition and "this order" did not violate the terms of said injunction.[4] Pursuant to the said order appellant paid herself from the funds of the Murphy estate a family allowance of $1,000 per month for the months of July and August.
Thereafter, on October 1, appellant filed another petition for modification of family allowance wherein she alleged that she had married subsequent to the filing of the aforesaid petition seeking an increase in family allowance from $750 to $1,000 per month, and that a family allowance of $1,000 was "no longer applicable" because she was not entitled to a family allowance by reason of her remarriage. In said petition she prayed for a family allowance in the sum of $750 per month for the maintenance of the two minor children according to their circumstances. The said petition came on for hearing on November 13, at which time it was opposed by the Bank.[5] Upon the evidence adduced at said hearing, the probate court made an order on November 15, which it signed and filed on December 4, wherein it found that at the time it made the order increasing the family allowance on August 8, it had not been advised of the remarriage of appellant; that said remarriage "terminated, ipso facto and by operation of *Page 231 
law," any right of appellant to an allowance for her support and maintenance out of the Murphy estate; and "that the said order made on August 8, 1962 without knowledge of the Court regarding the fact of said marriage was null and void." The probate court also found that the Murphy estate "is an insolvent estate" by virtue of the aforesaid pending superior court action brought against appellant and the Murphy estate by the Bank on behalf of the Kyle estate, and that therefore the family allowance theretofore granted should be terminated. Pursuant to these findings the court ordered that the petition for modification be denied; that the family allowance ordered on January 20, 1961, "terminated, ipso facto and by operation of law, on August 4, 1962"; that the order made on August 8, being null and void, was vacated; and that appellant reimburse the Murphy estate in the sum of $903.24, representing the excess of the family allowance to which she was entitled under the original order for family allowance made on January 20, 1961, "for the period from August 1, 1962 through August 4, 1962."
In the light of this procedural and factual background, we now proceed to discuss the issues presented on this appeal.
 The Effect of the Preliminary Injunction [1] Appellant contends that the aforesaid provision in the preliminary injunction relative to family allowance was binding on the probate court as to her right to have such allowance. This contention is without merit. It is apparent from a reading of the provision that the superior court in the injunction proceeding was not purporting to act in the exercise of its probate jurisdiction with respect to the granting or denying of family allowance. Such order was not an adjudication with respect to a family allowance so as to make it res judicata. Even if it could be thus construed, it would not prevent the probate court from subsequently modifying or terminating such allowance upon a proper showing as this is a power reserved by statute. (See Prob. Code, § 681; Estate of Hoffman, 213 Cal.App.2d 635, 641-643 [29 Cal.Rptr. 60].) The clear import of said provision, however, is to permit appellant, notwithstanding the injunction enjoining her from transferring the assets of the Murphy estate, to receive a family allowance for herself and her children therefrom not to exceed $1,000 per month, and to permit her to petition the probate court for an order increasing the family allowance of $750 per month, then being received pursuant to the order of January 20, 1961, to $1,000 per month. *Page 232 
 The Validity of the Order of August 8, 1962
The court below, sitting in probate, vacated the order made on August 8, increasing the family allowance from $750 to $1,000, on the basis that it was null and void because of the failure of appellant to disclose to the court, at the hearing, that she had remarried. [2] It is well settled that the right to a family allowance is lost when the one for whom it is asked has lost the status upon which the right depends. (Estate of Blair,42 Cal.2d 728, 732 [269 P.2d 612]; Estate of Pillsbury, 175 Cal. 454, 457-459 [166 P. 11, 3 A.L.R. 1396]; Estate of Heywood,149 Cal. 129, 130-131 [84 P. 834]; In re Still, 117 Cal. 509, 514 [49 P. 463]; Estate of Hamilton, 66 Cal. 576 [6 P. 493];Estate of Moore, 57 Cal. 437, 443; Estate of Boland, 43 Cal. 640, 643; Estate of Gosnell, 63 Cal.App.2d 38, 39 [146 P.2d 42].) Accordingly, a widow who remarries thereby forfeits her rights to any further family allowance, which then terminates without order of the court insofar as she, individually, is concerned. (Estate of Hamilton, supra; In re Still, supra, at p. 514; Estate of Gosnell, supra, at p. 39.) [3] The remarriage of the widow, however, is not a bar to the continuance of an allowance for the benefit of minor children. (Estate ofHouston, 205 Cal. 276, 283 [270 P. 939, 60 A.L.R. 730]; Estateof Hamilton, supra.)
In the light of these principles, appellant lost her right to a family allowance when she remarried on August 4. Accordingly, the original order for family allowance in the sum of $750 per month, made on January 20, 1961,[6] terminated as to appellant without further order of court on August 4. Appellant's remarriage did not, however, terminate the family allowance provided for in said order for decedent's minor children. Their right to such allowance is separate from and not dependent upon that of their mother. (Estate of Goulart, 218 Cal.App.2d 260, 265-266 [32 Cal.Rptr. 229]; Estate of Houston, supra, at p. 283.) [4] The object of the allowance is to enable the widow to discharge the duty of maintaining the family which devolves upon her at the death of her husband; and it is for the purpose of enabling her to discharge this duty that the court is authorized to appropriate a portion of the property of the estate. (Bell
v. Bell, 2 Cal.App. 338, 340 [83 P. 814].) [5] "The allowance is not made merely for the purpose of enabling her to defray the several expenses incurred for each member of the family, but that she may also provide a means whereby she and the minor *Page 233 
children may be kept together, and the family may be maintained as a whole." (Bell v. Bell, supra, at p. 340; see Keyes v.Cyrus, 100 Cal. 322 [34 P. 722, 38 Am.St.Rep. 296].) [6] An order for family allowance is not allocable proportionately to each member of the family, because the court, in determining the amount to be paid, does not attempt to fix the amounts which will be consumed for each member of the family, but aggregates the needs of the family as a whole, and makes an allowance which it considers to be reasonable for those needs. (Bell v. Bell,supra, pp. 340-341.) [7] "The amount of the allowance is fixed, with the view that it will be entirely consumed in maintaining the family; and if in this respect the court errs, whether by making the allowance too large or too small, it is an error in its judgment, which can be corrected only upon a further application, setting forth the grounds upon which the amount of the allowance should be modified. Until such change, if there be any portion which is not expended, it is the property of the widow, and if the expenses are greater than the allowance, the loss must be borne by her." (Bell v. Bell, supra, at p. 341.)[8] Moreover, the amount which the court determines will be reasonable is properly directed to be paid to the widow as the person charged with the maintenance of the family, and it then becomes a judgment in her favor for that amount. [9] Like any other judgment, when such order becomes final, either by affirmance on appeal or by lapse of the time within which an appeal may be taken, it becomes a binding and conclusive adjudication of every fact necessarily determined by the trial court as a basis for making the order; and until modified the order retains its force as a judgment. (Estate of Nelson,167 Cal. 321, 324 [139 P. 692]; Estate of Boselly, 179 Cal. 218, 219 [176 P. 45]; Estate of Allen, 42 Cal.App.2d 346, 352-353 [108 P.2d 973]; Estate of Bell, 131 Cal. 1, 3-5 [63 P. 81, 668]; Bell v. Bell, supra, at p. 340.) [10] Furthermore, the order is not subject to collateral attack. (Estate ofNelson, supra, at p. 324; Estate of Allen, supra, at pp. 352-353; Estate of Bell, supra, at pp. 3-5; see Estate ofBlair, supra, 42 Cal.2d 728, 732.)
[11] Applying the foregoing principles to the case at hand, we find that at the time of appellant's remarriage, there was in existence, by virtue of the original order for family allowance, a final judgment in her favor for the payment of $750 per month to her until further order of the court. While appellant lost the status upon which her right *Page 234 
to a family allowance depended and, therefore, such allowance terminated as to her, she was, nevertheless, entitled to receive the family allowance provided for in said order since she was the person charged with the maintenance of the decedent's family still remaining, i.e., the two minor children. [12] If the allowance, because of the change in the status of the family, was then too large, it was, of course, subject to modification in accordance with the altered conditions upon the petition of any interested party. (Prob. Code, § 681) But, until such modification was made, the order retained its force as a judgment and appellant was entitled to the installments of allowance as they accrued. (See Estate of Nelson, supra, at p. 325.)
[13a] Although appellant filed her petition for modification, by which she sought an increase from $750 to $1,000 for herself and minor children, prior to her remarriage, she had lost the status upon which her personal right to such allowance depended when the petition came on for hearing subsequent to the remarriage. [14] In California, it is well established that the right to a family allowance is not a vested right and that nothing accrues before the order granting it. (Estate of Blair,supra, at p. 733; Estate of Pillsbury, supra, 175 Cal. 454, 457.) [13b] Appellant did not, however, lose her status as a mother, and, as such, she was entitled to seek a modification on behalf of her minor children. She was, of course, obliged to divulge to the probate court her change in marital status in order that the probate court might have before it all of the circumstances and conditions affecting the needs of the members of decedent's family who were then entitled to family allowance. Her failure to do so amounted to a fraud upon the court. Such fraud, however, was intrinsic, and, therefore, cannot be attacked collaterally, but should have been litigated at the time of the hearing, notice of which had been given to the Bank and all interested parties.[7] (Rountree v. Montague, 30 Cal.App. 170, 179-182 [157 P. 623]; see Godfrey v. Godfrey, 30 Cal.App.2d 370, 379 [86 P.2d 357]; Gale v. Witt, 31 Cal.2d 362, 366-367 [188 P.2d 755]; Adams v. Martin, 3 Cal.2d 246, 248-249 [44 P.2d 572]; McLaughlin v. Security-First Nat.Bank, 20 Cal.App.2d 602, 605 [67 P.2d 726].) [15] Moreover, the question of appellant's status did not go to the jurisdiction of the court. In Rountree, it was held that the question of status does not go *Page 235 
to jurisdiction, and that an order setting aside a probate homestead to a remarried widow, although erroneous, was not subject to collateral attack. The Rountree case also indicates that the same rule applies to an order for family allowance. Likewise, in Estate of Moore, 170 Cal. 60 [148 P. 205], an order was entered after the widow's remarriage granting a family allowance for the period between the husband's death and her remarriage. Subsequently, the court entered an order settling the administrator's account in which he claimed credits for amounts paid pursuant to the order for family allowance. This item was objected to by parties interested in the estate. The probate court overruled the objection and settled the account, allowing the item. The lower court was upheld by the reviewing court.Rountree and Moore, insofar as they hold that the order for family allowance, when final, is not subject to collateral attack, have been approved by our Supreme Court in Blair. The disapproval of Moore by the Blair case is only to the extent that the rationale of Moore holds that the right to a family allowance is not lost by a widow when she remarries.
[16a] Appellant concedes she is not entitled to a family allowance after her remarriage, but urges that on August 8, the probate court was empowered to make an order increasing the family allowance, theretofore ordered, retroactively, thus giving her a personal right to such increase for the period from July 1, as prayed in her petition for modification, to the date of her remarriage on August 4. [17] It is convenient to note here that, as we pointed out in Estate of Hoffman, supra, 213 Cal.App.2d 635, the right to modify an order for family allowance includes the power to make the modification operate retroactively to the time of the filing of the application, or at least to the date of the service of the notice. [16b] In the present case, both the filing of the petition and the giving of notice occurred on the same day, i.e., July 24, and if the court was empowered to allow appellant a family allowance retroactively, it could do so only to July 24 and not to July 1. Appellant relies on Moore,
but, as we have hereinbefore pointed out, the principle urged by appellant which finds support in Moore has been disapproved by the holding in Blair that the right of a widow to family allowance is lost upon her remarriage.
[18] Although appellant was not personally entitled to a family allowance because of her changed marital status, the order made on August 8, while erroneous in two respects, i.e., *Page 236 
in ordering an increased allowance for her benefit as well as that of the children, and in making the increase retroactive to July 1 rather than July 24, was, nevertheless, a valid order with all of the attributes of a judgment when it became final. This order was not attacked directly, and hence retained its force until modified as provided in section 681 of the Probate Code.[8] Therefore, when the petition for modification, filed on October 1, came on for hearing on November 13, the order of August 8 was not subject to collateral attack. [19a]
Accordingly, the purported order of the probate court setting aside and vacating the order of August 8, on the basis of appellant's fraud in failing to disclose her remarriage, was erroneous and invalid. It should be here noted that by its order of December 4 the probate court also purported to set aside the original order of January 20, 1961, on the ground that it had terminated ipso facto by operation of law on August 4 because of appellant's remarriage. As hereinbefore pointed out this order was likewise not subject to collateral attack. This order was, however, modified to the extent provided in the August 8 order, which, as we have held, also became a final order continuing as such until modified.
 The Solvency of the Estate
As already indicated in the foregoing procedural narrative, the probate court, in its order denying the petition for modification filed on October 1, found that, by virtue of the pendency of the superior court action brought by the Bank against the Murphy estate, the latter is an insolvent estate under the laws of California, and that, therefore, the family allowance theretofore granted should be terminated. Accordingly, on this appeal, the parties have addressed themselves to the issue whether a suit against an estate claiming all of its assets renders such estate insolvent within the purview of Probate Code section 680[9]
The question presented is of first *Page 237 
impression. [20] While insolvency in its usual concept and definition has reference to the inability to pay debts or to the insufficiency to discharge all enforceable debts (see Webster's Third New Internat. Dict; see also Civ. Code, §§ 3439.02 and 3450), it is obvious that an estate without any assets is not a solvent estate. The difficulty presented in the situation confronting us, however, is the ascertainment of whether the Murphy estate has any assets. The very existence of such assets as property of the estate is uncertain and contingent upon the outcome of the superior court action. An adjudication in favor of the Murphy estate renders it solvent, while one in favor of the Bank would have the effect of making the estate insolvent.
[21] Within the meaning of probate law, one who claims as his own, adversely to an estate, specific property held and claimed by an estate is not a creditor of the estate (Estate of Dutard,147 Cal. 253, 256 [81 P. 519]; Estate of Wilson, 114 Cal.App.2d 468, 471 [250 P.2d 266]); nor is he a "person interested in the estate." (Estate of Dabney, 37 Cal.2d 672, 674 [234 P.2d 962].) [22] Should such a claimant, however, be placed in a less favorable position with respect to the provisions of section680 of the Probate Code than a creditor of the estate? We think not. It appears unreasonable to us that a creditor of an estate should be able to limit the payment of family allowance to one year from the issuance of letters in an insolvent estate and that this right should be denied to one who is claiming the assets of the estate as his own. The inequity of the situation is apparent when we consider that the creditor is seeking to enforce his claim against the property of the decedent; and while his claim is subordinate to the allowance paid during the one-year period, the payments are not made from his assets. The person claiming adversely to the estate, on the other hand, upon establishing the validity of his claim, finds that his assets have been depreciated to the extent of the family allowance. To permit the payment of such allowance until his claim is fully litigated could result in a substantial diminution of the assets which ultimately are determined to be his property.
Although there are no cases in this state exactly in point, there exist related precedents, predicated upon public policy, which uphold the right of the probate court to delay distribution of the estate where the right to assets claimed by the estate is involved in pending litigation. (See Estate of Ricaud, 57 Cal. 421, 423; Estate of King, 199 Cal. 113, 118-119 *Page 238 
[248 P. 519]; In re Painter, 115 Cal. 635, 639-640 [47 P. 700];In re Burdick, 112 Cal. 387, 391 [44 P. 734].) There are also cases in California where, notwithstanding such pending litigation, the refusal to delay distribution has been upheld. (Estate of Dabney, supra, at p. 674; Estate of Wilson, supra,
at p. 471.) However, in both Dabney and Wilson the reviewing court recognized the right of the probate court to delay distribution in the exercise of judicial discretion. Dabney, in holding that the probate court in the case under consideration had not transgressed the limits of judicial discretion in refusing to delay the distribution sought, took cognizance that in Ricaud the probate court had acted "in the exercise ofjudicial discretion" in delaying distribution. (P. 680.) InWilson, the court refused to hold up the settling of a final account until the termination of pending litigation. The appellate court, in affirming the court below, held that the probate court did not abuse its discretion in settling the account in advance of the termination of a suit claiming the assets of the estate.
[23] Turning to the problem posed by the instant case, we are satisfied that it, too, is one resting in the exercise of judicial discretion. Analogizing the question here presented to the precedents cited, and equating it to the intent and purpose of section 680 of the Probate Code, we are satisfied that a probate court is empowered, in the exercise of judicial discretion, to terminate a family allowance after it has continued one year after the granting of letters, upon a showing that there is a reasonable probability that the estate will be rendered insolvent because of pending litigation wherein the assets of the estate are claimed to be the property of another. Viewing the case at bench in the light of this principle, we cannot say that the court below abused its discretion. The instant case is different, and much stronger than the cases cited, because of the issuance of the preliminary injunction in the superior court action enjoining appellant, as administratrix of the Murphy estate, from making or being a party, except as therein specifically provided, to any transfers of any assets or funds out of or from said estate until the final determination of said action. This is a circumstance considered persuasive inDabney wherein the Supreme Court noted that the granting of injunctive relief might require postponement of the distribution. It should be called to mind that the preliminary injunction, while restraining appellant from distributing and transferring the assets of the estate, left the matter of modification of the family allowance to the probate *Page 239 
court. Accordingly, in the exercise of its discretion, and assuming that the probate court had sufficient evidence to support its findings, as we do not have the record of the proceedings had at the hearing of November 13, the probate court was warranted in terminating the family allowance. In doing so it furthered the objective of the preliminary injunction which was to keep the assets in question in statu quo pending the outcome of the litigation.
[19b] The court below erred, however, in terminating the family allowance as of August 4. The making of the original order for family allowance on January 20, 1961, and its modification on August 8, were, as already pointed out, final orders not subject to collateral attack. Moreover, the making of such orders at the time they were made were adjudications that the estate was solvent at that time. (Estate of Bell, supra, 131 Cal. 1, 3-5;Estate of Allen, supra, 42 Cal.App.2d 346, 352-353.) InAllen an order was made granting a family allowance on December 2, 1936, before the filing of the inventory. Upon the settlement of the third and final account of the executrix in 1939 an objection was interposed to the payment of family allowance up to the date of the decree appealed from, on the ground that the estate was at all times insolvent and that the payment of family allowance was therefore limited to one year. The appellate court held that the original order for family allowance had become final and remained in force until it was directly attacked and set aside. The court noted that while, at the hearing upon the final account, the appellants objected to certain payments upon the family allowance on the ground of the insolvency of the estate, which then appeared, they had not theretofore moved to set aside the order. "They had the right," said the court, "to seek a modification or change of the order as soon as they discovered the estate was insolvent, but any such modification or change could not operate retroactively." (Pp. 352-353.) The statement in Allen with respect to retroactive operation of the order is interpreted by us to mean that the modification could not operate retroactively beyond the time the motion to modify was made. [24] As held in Estate of Hoffman, supra, 213 Cal.App.2d 635, the right to modify includes within its scope the power to terminate the order retroactively to the time of the filing of the application for modification, or at least from the date of service of the notice for modification. [25]
Accordingly, in the instant case the court below, in the exercise of its discretion, could have terminated the family *Page 240 
allowance as of October 1, when the petition was filed, or on September 28, when service by mail of the notice of the hearing thereof was made upon the Bank.[10] In view of the conclusions herein reached by us, the order directing the widow to pay back to the estate the amount of $903.24, representing family allowance from August 4 to September 1, was erroneous.
The order denying the petition for modification of family allowance is affirmed, insofar as it terminates such allowance based upon the finding that the estate is insolvent, with directions to the trial court, in the exercise of its discretion, to determine, in accordance with the views herein expressed, the effective date of such termination. In all other respects the order is reversed. Each of the parties shall bear his own costs on appeal.
Bray, P.J., and Sullivan, J., concurred.
[1] An appeal has been taken from the whole of said order, which includes several orders to wit: An order denying the petition for modification of family allowance; an order vacating a previous order increasing family allowance; an order terminating family allowance retroactively; and an order directing reimbursement of certain family allowance paid. These are all appealable orders. While Prob. Code, § 1240, merely states that an appeal lies from "granting or modifying a family allowance" it has been held that this language encompasses an appeal from an order for family allowance erroneously made (Estate of Fretwell, 152 Cal. 573, 573-574 [93 P. 283]), an order discontinuing family allowance (Estate of Chapman,158 Cal. 740, 742 [112 P. 302]; Estate of Hoffman, 213 Cal.App.2d 635, 640 [29 Cal.Rptr. 60]), and an order retroactively terminating family allowance. (Estate of Hoffman, supra, at p. 640.)
[2] All date references hereinafter, unless otherwise indicated, are to the year 1962.
[3] The said provision, in its entirety, reads as follows: "That on the stipulation of plaintiff, the defendant, Mary Juanita Murphy, and without prejudice to the position of the parties, may have and receive and may pay herself out of the said Estate of Vincent J. Murphy, alias, deceased, No. 26868, a Family Allowance in the sum of $1,000 per month for her support and maintenance and for the support and maintenance of her children, Vincent James Murphy, III, and John Mathew Murphy, until the further order of this Court, and for that purpose is at liberty to petition the above Court, sitting in probate, in said Probate Proceeding No. 26868 for an Order increasing the Family Allowance from $750 per month as heretofore, to $1,000 per month."
[4] The said order also recited that the attorneys for the Bank were served with a copy of the petition and a copy of the proposed form of order. Respondent Bank concedes in its brief that it did not oppose said order.
[5] An answer to said petition was filed by the Bank wherein it asserted the pendency of the aforesaid superior court action to impress a trust upon the assets of the Murphy estate and of the preliminary injunction issued therein.
[6] The validity of this order is not questioned on this appeal.
[7] The notice of hearing of said petition was posted as required by Prob. Code, § 1200, on July 24.
[8] Prob. Code, § 681 provides as follows: "Such allowance may be granted before the inventory is filed, either by the court or a judge thereof; in which case it shall continue until modified by the court. After the inventory is filed the court may grant such allowance, or may modify any allowance made before the filing of the inventory, upon the petition of any person interested and a hearing after notice given for the period and in the manner required by section 1200 of this code."
[9] Prob. Code, § 680 states in pertinent part as follows: "The widow, . . . minor children, . . . are entitled to such reasonable allowance out of the estate as shall be necessary for their maintenance . . ., during the progress of the settlement of the estate, which, in case of an insolvent estate, must not continue longer than one year after granting letters."
[10] Notice of hearing was mailed to the Bank on September 28 pursuant to a request for special notice. (Prob. Code, §§ 1200, 1202; see Code Civ. Proc., § 1013)