[S. F. No. 5727. In Bank.—December 22, 1911.]

In the Matter of the Estate of JOHN J. O'GORMAN, Deceased.

WILL—BEQUEST OF INTEREST IN ESTATE—ACQUISITION OF INTERESTS OF OTHER BENEFICIARIES.—A bequest in a will of all the testator's "interest in the estate" of a named decedent will be construed to pass not only such interest as vested in him as a beneficiary of such estate, but also such further interests as he may have acquired in the property thereof by succession or bequest from other beneficiaries, where such estate was in process of administration at the time of the death of the testator, and his interests therein constituted the whole of the property left by him.

ID.—DEFINITION OF WORD "ESTATE"—ASSETS OF DECEDENT.—The word "estate" is used in various senses, and one of its most common uses is to denote and describe in the most general manner the property composing the assets of a decedent.

ID.—PRESUMPTION IN FAVOR OF TESTACY—CONSTRUCTION OF WILL.—It is presumed that a testator intended to dispose of all his property by his will and a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction.

APPEAL from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

J. A. Kennedy, and John J. McDonald, for Appellants.

Emil Pohli, and P. V. Ross, for Respondents.

ANGELLOTTI, J.—This is an appeal by three heirs at law and next of kin of John J. O'Gorman, deceased, they being his second cousins, from a decree of final distribution of his estate.

Said deceased died testate on October 3, 1906, his will, evidently drawn by a layman, having been executed the day before his death. The question presented by this appeal is one of construction of such will, which was as follows:

"SAN FRANCISCO, Oct. 2, 1906.

"I hereby make this my last Will and Testament and declare all previous wills or assignments of interest null and void. I hereby bequeath and bequeft all my interest in and to my interest in the Estate of Thomas O'Gorman deceased. To be distributed as follows unto Edward O'Sullivan Two hundred and Fifty ($250) Dollars; To Mrs. Dora Singer widow, the sum of $250.00 To Mrs. Kate Cummings the sum of $250.00. To Mrs. Mary Wirtz a married woman the sum of $250.00. To Mrs. A. Klinner a married woman the sum of $250.00. To Mrs. Catherine La Grave, widow the sum of $250.00. To James O'Connor the sum of $250.00 due to him for money advanced to me, Unto Bernard P. La Grave, the rest and residue of my interest in the Estate of Thomas O'Gorman, deceased, for money previous advanced to me by said Bernard P. La Grave, in the sum of $500.

"I hereby appoint Bernard P. La Grave, executor of my said Last Will and Testament.

"Witness my hand this 2nd day of Oct. 1906."

his

JOHN J.  X  O'GORMAN.

mark

"Witness to mark

"J. J. FORD JR.

"J. P. GARDNER, M. D.

"John J. O'Gorman being unable to write made his mark and I wrote his name near and signed as a witness.

J. J. FORD JR."

At the time of making this will and at the time of his death, the only property owned by deceased was such interest as he owned in two lots of land known as lots 7 and 15 of block 96, Central Park Homestead Association, San Francisco, which at the time of the death of his father, Thomas O'Gor-

man, in the year 1873, were community property of such father and his wife, Anne O'Gorman, who survived her husband. Said Thomas O'Gorman had died testate, devising these lots, which constituted his whole estate, in undivided shares to his said wife, his daughter, Kate O'Gorman, and deceased, John J. O'Gorman, the latter's share being one sixth. The administration of the estate of said Thomas O'Gorman, the father, had not been completed at the time of the death of this deceased.

At the time of the making of the will of this deceased, the following events had occurred:

The mother, Anne O'Gorman, had died intestate, leaving no estate except such interest as she had in these lots, and no probate proceedings had been instituted in the matter of her estate.

The daughter, Kate, had married one James R. Burke, had conveyed all her interest in the estate of her father to her husband, and had died.

Said Burke had subsequently died testate, giving all his estate, which consisted entirely of such interest in said lots as he had acquired from his wife, to deceased John J. O'Gorman. Administration of his estate had not been completed.

Another daughter, Anne O'Gorman, who was not devised any interest in these lots by the father, Thomas O'Gorman, and who survived her mother, subsequently died, leaving no estate except such interest in said lots as she succeeded to as heir of her mother (which was, subsequent to the death of John J. O'Gorman, distributed in the matter of the estate of her mother, to her successor in interest, Mary C. O'Kelly, and which is in no way involved here).

At the time of the making of the will, deceased, John J. O'Gorman, knew all of the facts above stated.

It thus appears that at the time of the making of the will deceased was the owner not only of such interest in the lots as he acquired by the will of his father, Thomas O'Gorman, but also of such interest therein as he took under the will of James R. Burke, and such interest as he succeeded to as heir of his mother, and was the owner of no other property.

The claim of appellants is that the will must be construed as disposing only of such interest in said lots as he took under the will of his father, viz.: a one-sixth interest therein, and

that as to the residue of his interest in said property, the parts to which he had succeeded as devisee of Burke and as heir of his mother, he must be held to have died intestate, and that, consequently, such residue should be distributed to them as the heirs at law of deceased.

The court below concluded that the will of deceased disposed of all his interest in the lots, both that acquired under his father's will and the interests acquired by him as devisee of Burke and heir of his mother. The lots having been sold subsequent to the death of deceased by order of the probate court in the administration of the estate of the father, for $5175, the residue of the estate of the father, amounting to $4129.06, was distributed as follows: To the estate of this deceased, $344.09; to the estate of Anne O'Gorman, the mother, $2408.61, and to the estate of Burke, $1376.26. The distributable estate of the mother, consisting entirely of her portion of the proceeds of the sale of such lots, was distributed in the matter of her estate, $1059.66 to the estate of this deceased, and $1059.66 to Mary C. O'Kelly, successor in interest of the daughter, Anne. The distributable estate of Burke, consisting entirely of his portion of the proceeds of the sale of such lots, and amounting to $1168.06, was distributed in the matter of his estate to the estate of the deceased. These accessions made the value of the estate of deceased, consisting entirely of proceeds of the sale of such lots, $2571.81, and the residue for distribution, after payment of expenses of administration, etc., $1876.42. This amount was distributed by the lower court to the seven legatees under the will of deceased, in equal shares, in payment of their respective legacies and on account of the interest due thereon.

We entertain no doubt as to the correctness of the conclusion of the learned judge of the lower court to the effect that the will must be construed as disposing of all the interest of deceased in such lots. Appellants rely upon certain well known rules of construction, such as, that the intention of the testator is to be ascertained from the will itself, that parol evidence is not admissible to modify, change, or vary the expressed intent (*Estate of Young,* 123 Cal. 337, [55 Pac. 1011]), and that the words of a will are to be taken in their ordinary grammatical sense, unless a clear intention to use them in another sense can be collected, and which other can

be ascertained. (Civ. Code, sec. 1324.) But these rules do not preclude the conclusion reached by the lower court.

The word "estate" is used in various senses, one of its most common uses being to denote and describe in the most general manner the *property* composing the assets of a decedent. The words "all my interest in the estate of Thomas O'Gorman, deceased," may very well mean "all the interest that I have in the particular property that is being administered on as the estate of Thomas O'Gorman, deceased, however acquired." There is nothing in the words used to necessarily limit the interest intended to be disposed of to any particular portion of the whole interest of the testator in such property. The words are *"all* my interest." Taking into view the circumstances under which the will was made, it seems certain that this was the sense in which the words were used in the will before us; in other words that the testator intended by the language used to dispose of all his then interest in the property left by Thomas O'Gorman. The administration of the property left by Thomas O'Gorman was still pending and no distribution thereof had been had. The testator was the owner of certain undivided interests in said property, comprising nearly the whole thereof, acquired in part directly under the terms of the will of said Thomas and in part from others who succeeded at the death of Thomas to such interests. These undivided interests in this particular property constituted the whole of the property of the testator. What more natural under such circumstances than that he should describe *all* his property by the use of the language contained in this will? And what other meaning can reasonably be given to such language in view of the circumstances set forth? It is well settled that the presumption is that a testator intended to dispose of all his property by his will (*O'Connor* v. *Murphy,* 147 Cal. 153, [81 Pac. 406]), and "that a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction." (*Estate of Dunphy,* 147 Cal. 99, [81 Pac. 315]. (See, also, *Estate of Heywood,* 148 Cal. 188, [82 Pac. 755]; *Estate of Heberle,* 153 Cal. 277, [95 Pac. 41].) "Constructions which lead to intestacy, total or partial, are not favored; and therefore, such an interpretation should, if reasonably possible, be placed upon the provisions of the will as will prevent that result." (*Le Breton*

v. *Cook,* 107 Cal. 416, [40 Pac. 552].)   This presumption appears peculiarly applicable here.  It is inconceivable that this testator making this instrument which he called his last will, intended that the same should be operative only as to about one sixth of the property of which he knew himself to be the owner, and intended that he should die intestate as to the remaining five sixths of his property, especially when he had no nearer relative or next of kin than second cousins.  No such construction is required by the language of this will. We think it clear, in the light of all the circumstances existing and known to the testator at the time of the making of the will, that the language used shows an intent on his part to dispose by his will of all his then interest in the real property left by Thomas O'Gorman, deceased.

The decree of final distribution is affirmed.

Shaw, J., Sloss, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.