[Civ. No. 6237.  Second Appellate District, Division Two.—December 18, 1928.]

In the Matter of the Estate of EMMASON C. ROSE, Deceased.  BEATRICE S. ROSE, Appellant, v. WATSON S. ROSE, a Minor, etc., Respondent.

Bordwell, Mathews & Wadsworth, Ray W. Bruce and John H. Mathews for Appellant.

Joseph N. Owen for Respondent.

KEETCH, J., *pro tem.*—Emmason C. Rose, the husband of appellant herein, died June 10, 1927, in the city of Los Angeles. Prior thereto he executed two holographic wills, one dated April 16, 1927, and the other June 4, 1927—the latter six days prior to his death. The will of April 16th reads as follows:

"I, Emmason C. Rose, being of sound and disposing mind and healthy body, herewith declare this my last will and testament and declare all others null and void.

"First: I direct that my wife, Betty S. Rose, be appointed executor and administrator of this my last will and testament and that she serve without bond and that my wife, Betty S. Rose, be given power to mortgage, sell, lease, or dispose of all or any part of my estate without first obtaining consent of court, but subject to approval of court thereafter.

"Second: I direct all my just debts be paid.

"Third: I direct my funeral expenses be moderate in cost and that my remains be placed in a burial vault at Forest Lawn.

"Fourth: I appoint my wife, Betty S. Rose, guardian of my son, Watson S. Rose.

"Fifth: I direct my wife, Betty S. Rose, to place Five Thousand ($5,000.00) Dollars, in at least four different preferred stocks or bonds, and hold same in trust and administer the same in trust, my wife to receive the income thereof until my son, Watson S. Rose, becomes twenty-one years of age, when I direct the principal so invested, be given to Watson S. Rose, for his possession to have and hold. Should, however, Watson S. Rose not attain the age of twenty-one, then this trust becomes the possession of my wife, Betty S. Rose, to have and hold.

"Sixth: I herewith give and bequeath to my wife, Betty S. Rose, all my remainder possessions, both real and personal, wherever situated, to have and hold as her separate and own possession.

"Seventh: Should, however, my wife, Betty S. Rose, die before my death, then I request the Court to appoint the Farmers and Merchants National Bank of Los Angeles as my executor and I direct them to administer my estate for the benefit of my son, Watson S. Rose, giving him the interest my said estate until he reaches the age of twenty-one

years, when Watson S. Rose is to receive the entire possession of the principal and interest without any trust whatever, and for his own possession.

"I herewith subscribe my name to this document on the sixteenth day of April, 1927, at Los Angeles, California.

"EMMASON C. ROSE."

The will of June 4th reads:

"I, Emmason C. Rose, herewith declare this my Last Will and Testament, and that all others are null and void.

"I direct that my just debts be paid, and I desire to be interred in Forest Lawn, and I request that my wife, Betty S. Rose, be made executor and administrator of this my last Will and Testament.

"I herewith give my wife, Betty S. Rose, all my possessions, both real and personal, and request that she serve without bond and that she be permitted to execute deeds and transfer any property.

"I herewith place my hand and seal this 4th day of June, 1927.

"EMMASON C. ROSE."

The deceased left surviving him his wife, the appellant herein, and Watson S. Rose, a son, seventeen years of age.

The last will was admitted to probate on July 5, 1927. Thereafter and on October 20, 1927, the appellant, Mrs. Rose, petitioned the probate court to admit the will of April 16th to probate as a part of the last will. Probate was denied by the judge of the probate department of the superior court of Los Angeles County upon the ground that the will of April 16th was revoked by the will of June 4th. It is from this order denying probate to the first will that the appeal is taken. No question is raised respecting the capacity of the testator, the form or the execution of the documents by him. The sole question to be decided is, Did the last will revoke the prior will?

It will be noted that in the first will the testator provided that the sum of five thousand dollars be set aside in trust for his son, Watson S. Rose, the wife, if she survived, to receive the income from this sum until Watson became twenty-one, at which time the principal was to be given him. In the last will the son is not mentioned, the effect of which is to give to him that share of the estate to which he would have been entitled had his father died intestate.

It is urged by appellant that the two documents should be read together as constituting the last will and testament, and as one of the reasons therefor it is suggested that the law does not favor intestacy—citing *Le Breton* v. *Cook,* 107 Cal. 410, 416 [40 Pac. 552] , and *Estate of O'Gorman,* 161 Cal. 654, 658 [120 Pac. 33]. Counsel for respondent—who was appointed guardian *ad litem* by the court upon the commendable request of the appellant in order that the question might be presented in justice to all concerned— also suggests that ''it would also in all fairness from an inspection of the two writings seem true that by failing to read the two wills together and to consider them as one document that the last expressed intent of the testator would be thwarted simply because of his ignorance of or other failure to observe the plain mandate of the law.'' At the same time counsel, after a full, fair, and able presentation of his points and authorities in behalf of the respondent, reaches the definite conclusion that the two wills cannot stand together, for the reasons: (1) that the second will is a complete, separate document and not a codicil; (2) that it is a formal holographic will; (3) that it is an attempted (although ineffectual) disposal of all of the property of the decedent, and (4) that it was expressly intended to revoke, cancel and make void all other wills. From our perusal and consideration of the language of the two documents we are forced to the same conclusion, and in so doing we are not unmindful of the suggestion that wherever reasonably possible wills should be construed to avoid intestacy.

■ It is, perhaps, unnecessary to say that it is always the intention of the testator that must govern, and where that is clearly expressed it must operate. That is the sole question here, and the language used admits of but one answer. Both wills are complete, if taken separately, and comply with all the formalities required by the law in the making of such wills. Paragraph 1 of section 1292 of the Civil Code provides that a written will may be revoked ''by a written will or other writing of the testator, declaring such revocation or alteration and executed with the same formalities with which a will should be executed by such testator.'' Section 1296 of the same code provides that ''a prior will is not revoked by a subsequent will *unless the latter contains an express revocation* or provisions wholly inconsistent with the terms of the former will.'' (Italics ours.)

■ In the will of June 4th the language of the revoking clause—which is a part of the will itself—reads: "I, Emmason C. Rose, herewith declare this *my last* will and testament and that *all others are null and void.*" He may or may not have known the legal effect of his failure to mention his son in his will, but as a clear and unambiguous expression of his intent to revoke "all other" wills it leaves nothing to question or argument. In such a case the prior will is revoked *eo instante.* In the case of *Estate of Iberg,* 196 Cal. 337 [238 Pac. 74], it was said that a man cannot have two independent wills at the same time, each acting upon the same subject matter and each professing to make a distinct and full disposition thereof. Therefore, the court held that where each of two testamentary instruments is a distinct, substantive will of itself, and one is not in the nature of a supplement or codicil to the other, and the later in time is competent to make, and does in fact make, a different and full disposition of the testator's property, it revokes the earlier, and is the will of the deceased." In 40 Cyc., at page 1177, it is said that "an express revocatory clause will operate as such notwithstanding certain devises or legacies in the subsequent will fail to take effect or account of the incapacity of the devisee or legatee to take, or on account of the illegality or indefiniteness of the bequests"—citing cases. "As a general rule, the presence of a revoking clause in a later writing is accepted as conclusive proof of an intention on the part of the decedent to nullify the provisions of an earlier instrument." (26 Cal. Jur. 811, sec. 144, citing *Estate of Holloway,* 195 Cal. 711 [235 Pac. 1012].) "If the later writing purports to make disposition of all of the decedent's property the earlier instrument is deemed to be revoked." (*Estate of Bassett,* 196 Cal. 576 [238 Pac. 666]; *Estate of Scott,* 141 Cal. 485 [75 Pac. 44].)

In the case of *Lasier* v. *Wright,* 304 Ill. 130 [28 A. L. R. 674, 136 N. E. 545], it is said: "The word 'declare' means primarily to make known, to make manifest, to make clear, so that a will properly executed and stating that it is the last will and testament of the testator, declares a purpose to revoke." In the same case the court further says: "Upon a question of revocation of a former will by a later will the English courts have established, and have universally followed two rules of construction which have never been departed from by those courts so far as we have been able to

ascertain, and both rules prevailed before and since the enactment of the English Statute of Frauds and the English Wills Act of 1837. The first rule is: That where the testator has in the later will used express words in terms revoking the former will or wills, such words are to be taken to mean what he has expressed, and that such words will be operative, although the later will contained no inconsistent disposition of the property. This rule is the rule both at law and in equity." In Page on Wills, the author, in section 267, says: "If that later will contains an express clause of revocation, the earlier will is thereby rendered invalid, irrespective of the disposition of the property made by the second will; and this is true even if the other provisions of the revoking will proved ineffectual."

It is also urged by counsel for respondent that in addition to the express revocatory clause of the last will its dispository terms are wholly inconsistent with those of the prior will, and, therefore, the latter is subject to revocation under section 1296, *supra*. As already stated, the will of April 16th, the prior will, provided for a specific legacy to the son of the testator, the residue going to the wife in the event she was alive to take it, otherwise all of the estate was to go to the son. As stated by respondent, under this will, after payment of the debts of the estate and the legacy referred to, the wife might not have received anything. On the other hand, by the provisions of the will of June 4th, the subsequent will, it is apparent from the language of the testator that it was his intention to make his wife the principal and sole beneficiary—in other words, a complete disposal of his property wholly inconsistent with the prior will.

We have considered the cases cited by appellant, but they all have application to some other circumstances or conditions than that of a subsequent will expressly revoking a former will, or where the two wills are wholly inconsistent, as in the present case.

The order denying probate to the will of April 16th is affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 17, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1929.

All the Justices concurred.