[Civ. No. 4392. Third Appellate District.—June 8, 1931.]

In the Matter of the Estate of MORTON SMITH SAYRE, Deceased. MAUDE M. SAYRE, Appellant, v. BURT G. SAYRE, Respondent.

650

Herbert V. Keeling and W. D. L. Held for Appellant.

M. H. Iversen and Burt W. Busch for Respondent.

JAMISON, J., *pro tem.*—Two questions are presented for consideration upon this appeal, namely, Was the decree of distribution made in accordance with the terms of the will of deceased and was the court authorized to order the discontinuance of the family allowance?

Deceased died on April 1, 1929, leaving as his heirs his widow, Maude M. Sayre, and a son, Burt G. Sayre. Prior to his death, on May 10, 1924, he executed a will in which the following disposition of his property was made: "I give, devise and bequeath my estate to my wife, Maude M. Sayre, and my son, Burt G. Sayre, share and share alike, that is to say my said wife will be entitled, under the laws of California, to take and have one-half of our community property and it is my will that my wife shall have such portion of my separate property so that she and my said son shall share equally in my estate, both community and separate."

The trial court decreed that, under the terms of the will, the entire property of deceased, including both the separate property of decedent and the community property belonging to him and his wife should be equally divided between his wife and son and so ordered distribution.

██ Appellant contends that by said decree there should have been distributed to her, not only one-half of the separate property, but also one-half of decedent's half of the community property. In the case of *Estate of Franck,* 190 Cal. 29 [210 Pac. 417], Chief Justice Waste stated that, "the cardinal rule for the construction of wills is to ascertain the intention of the testator, and this is determined from the words of the will, considering the circumstances under which it was made, if there is any uncertainty in its language", citing numerous authorities. And this intention is to be ascertained from the words of the will read as a whole. (*Estate of Metcalf,* 199 Cal. 716 [251 Pac. 202]; Civ. Code, sec. 1321.)

It will be observed from a reading of the will that the testator used the words "my estate" in two places, once near the beginning wherein he says, "I give, devise and bequeath my estate to my wife, Maud M. Sayre, and my son, Burt G. Sayre, share and share alike" and again near the end where he says, "so that she (his wife) and my said son shall share equally in my estate both community and separate".

The contention of appellant is that by the word "estate", as used in this will, is meant the separate property of deceased and his half of the community property. ██ One of the most common uses in which the word "estate" is used is to denote and describe in a most general manner

the property composing the assets of a deceased. (*Estate of Gorman,* 161 Cal. 654 [120 Pac. 33].)

During the lifetime of the husband, he is the owner and entitled to the possession of all the community property. (*Estate of Dargie,* 179 Cal. 418 [177 Pac. 165]; *Estate of Burdick,* 112 Cal. 387 [44 Pac. 734]; *Blethen* v. *Pacific Mut. Life Ins. Co.,* 198 Cal. 91 [243 Pac. 431].)

We are of the opinion that when the words "my estate" were used in the will, in legal contemplation, they included all property of every kind which the testator owned and in which he had an interest, and, therefore, included not only his separate property, but also the whole of the community property. While it is apparent that the testator in nowise sought to interfere with the half of the community property that would pass to his wife upon his death, it is also apparent that in executing the will he had in mind the fact that it would so pass.

The concluding portion of the will wherein the testator said: "It is my will that my wife shall have such portion of my separate property so that she and my said son shall share equally in my estate both community and separate" clearly demonstrates that it was the intention of the testator to divide equally between his wife and son not alone his separate property, but also the whole of that belonging to the community.

It is the duty of the court to interpret the provisions of a will to carry out the intention of the testator, if that intention can be ascertained, provided no law is violated in so doing. (*Estate of McCray,* 204 Cal. 399 [268 Pac. 647]; *Estate of Lavin,* 99 Cal. App. 586 [278 Pac. 925].)

As to the order discontinuing the family allowance, the only point made by appellant is that the court was without authority to make the order, because no notice had been given that such order would be made. On the fifteenth day of October, 1929, an order was made granting appellant, as the surviving widow, an allowance out of the estate of $200 per month during the progress of the settlement of the estate. Section 1466 of the Code of Civil Procedure provides for a family allowance during the progress of the settlement of the estate. In *Estate of Clark,* 96 Cal. App. 243 [274 Pac. 76], the court quoted with approval the following expressions used by the Supreme

Court of Montana in the case of *In re Dougherty's Estate,* 34 Mont. 336 [86 Pac. 38], "that the widow was entitled to a family allowance for such time only as was reasonably necessary to settle the estate; and the trial court was justified in refusing any such allowance after the estate should have been reasonably ready for distribution".

Notice of settlement of the final account and of the petition for distribution of said estate was duly given. Presumptively appellant knew that the family allowance would cease with the distribution of the estate and having received notice of said petition for distribution no further notice of the discontinuance of the family allowance was required.

The order settling the final account of the executor and decree of distribution are affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.