In re BUNDY'S ESTATE.  GODDARD et al. v. BUNDY.

No. 7540.  Decided March 4, 1952.  (241 P. 2d 462.)

300

See 34 C. J. S., Executors and Administrators, sec. 521. Interests of executor antagonistic to other interested parties. 21 Am. Jur., Executors and Administrators, sec. 156; 18 A. L. R. 2d 633.

*Thatcher & Young, Paul Thatcher,* Ogden, for appellants.

*David K. Holther,* Ogden, for respondent.

McDONOUGH, Justice.

Respondent is the widow of the deceased Ora Bundy. She was appointed administratrix of his estate on July 8, 1946, whereupon she entered upon the duties of administratrix performing those tasks normally performed under such responsibility. Appellants are the adult children and heirs at law of the deceased and are the step-children of respondent. Bundy at the time of his death was in partnership with appellants and respondent, he having a 35% interest, respondent a 25% interest, and each of the appellants a 20% interest. The total estate left by the deceased amounted to approximately $81,000, of which the largest part consisted of the value of deceased's partnership interest. In order to carry out her duties as administratrix, it thus became necessary for respondent to also carry out the details of partnership liquidation. Her statutory incapacity to act as administratrix when she was also the surviving partner was expressly waived by the heirs shortly after the death of Bundy.

During the first nine months of respondent's operation as administratrix, she drew approximately $5,800 as advances and family allowance. She then filed a petition for a family allowance of $300 per month. In the petition she

did not mention property of the value of $40,941.30 which she owned personally or had acquired by right of survivorship. Notice of hearing on this petition was received by both appellants. The notice, however, did not mention the property owned by respondent, nor the amount sought for family allowance. Appellants made no inquiry concerning the allowance at this time and did not attend the hearing.

On August 27, 1947, some 14 months after respondent's appointment as administratrix, there was a partial distribution of the estate by which each heir received $10,000 in cash. The petition for the second and final account and the petition for final distribution was filed on May 16, 1949. Appellants objected to this final account and now appeal from the overruling of their objections by the trial court. At the hearing on the final account, it was stipulated that the estate had on hand sufficient money to pay all debts, costs and expenses of administration within 15 months after decedent's death.

Appellants' principal objection is that the administratrix should be refused credit upon her accounting for the sum of $10,600 which she paid to herself as a family allowance during three years of administration. They contend that she had adequate resources for her support and that her failure to reveal to the court her separate property in the petition for family allowance was a fraud upon the court and the appellants because of her position of trust as administratrix. It is their position that the entire allowance should be set aside and the amount thereof charged against the widow's distributive share of the estate.

In 1904, this court in *Re Pugsley's Estate*, 27 Utah 489, 76 P. 560, held that a family allowance was an absolute right and must always be made even though the wife had considerable separate property of her own. However, this case was decided before the last sen-

tence of 102-8-1, U. C. A. 1943, was added by the Legislature in 1915. This provides:

"The court may, in its discretion, exclude from such family allowance, except homestead rights, any person who may have a separate property or income."

This amendment alters the rule of the *Pugsley* case. The allowance is no longer an absolute right. The court may consider the extent and nature of the claimant's property in determining the amount of, or in denying, the family allowance.

As pointed out in the *Pugsley* case, a number of factors are to be considered in determining the amount. They include the age, the health, and the social position of the claimant; education of children, the value and solvency of the estate; and finally the value and nature of the widow's own separate property. The purpose of a statute such as this is to provide a means of support for dependent spouses and children in place of the support which the decedent had given during his lifetime.

It is true that respondent was a fiduciary and as such she should have made full disclosure to the court in regard to her personal wealth. Appellants, however, were given notice of the petition. They had the right and the opportunity to inquire as to the amount requested for family allowance. Further, they had the means to discover the approximate value of respondent's possessions and full ability to inquire and investigate. No statements or actions were made or taken by respondent to stop or arrest inquiry on the part of appellants. In view of these facts, it is evident that no extrinsic fraud was practiced by respondent in regard to family allowance. Upon hearing of the objections, it was disclosed that the income from respondent's property in 1947 was only $1,739 and in 1948, $1,382.24. On this basis, the trial court held that, even had the facts been disclosed, he would have awarded the same allowance. Hence, it is evident that ap-

pellants were not injured by the non-disclosure and that there was no such deception as would warrant charging the entire family allowance against respondent's distributive share.

A different situation existed after the first distribution of the estate. The record shows that respondent received $10,000 cash upon this distribution and that there could have been a final distribution within a reasonable time after the first distribution. The estate, however, was kept open thereafter for almost two years. It thus appears that there was an undue delay in making the final accounting which is contrary to the salutary policy of winding up estate affairs as expeditiously as possible. Where there is a prolonged administration which appears to have diluted the estate through a family allowance and where there is no evident necessity for such prolongation such allowance should not be continued. *In re Dougherty's Estate,* 34 Mont. 336, 86 P. 38; *In re Trepp's Estate,* 71 Mont. 154, 227 P. 1005; *In re Clark's Estate,* 96 Cal. App. 243, 274 P. 76; and *In re Sayre's Estate,* 114 Cal. App. 649, 300 P. 833.

True, there are contra cases under statutes similar to ours before its amendment. However, in view of the amendment of the family allowance provision in 1915; of the evidence relative to the widow's financial circumstances; the fact that there were no minor children; and the stipulation relative to the condition of the estate after 15 months of administration, we are of the opinion that it was an abuse of discretion upon the part of the trial court to approve the family allowance to the date of final distribution. It does appear from the record that some delay was occasioned by efforts made by the administratrix to sell a piece of real estate which one of appellants desired sold rather than be decreed to him. However, since the realty could have been distributed to the heirs as tenants in common, delaying the closing of the estate for the excessive period stated was unjustified.

Giving the widest reasonable latitude for the exercise of the trial court's discretion, it is clear that allowing five months, in' addition to the 15, would have given ample, if not excessive, time within which to attempt the sale of the realty, to draw up a final account and petition for distribution, give notice thereof, and have a hearing thereon. The family allowance should have been discontinued after 20 months of administration.

Appellants' second objection is that certain household furniture was not inventoried as part of the estate by respondent and that such furniture should properly have been so inventoried. The court below found that these furnishings were the joint property of decedent and his wife, Mrs. Bundy, and that she · acquired title to them by survivorship. From the record, it appears that some of the property was bought with Mrs. Bundy's own funds. Some she received by gifts, and the rest was purchased out of funds from Mr. Bundy's income. Those in the last mentioned category, it is contended, should have been inventoried as part of his estate. The record does not contain any evidence to indicate a joint tenancy. It may be that in a proper case the purchase of ordinary household furnishings by the head of the family for use of the members thereof might justify an inference of joint ownership. But here the evidence indicates that certain furniture was purchased by Mrs. Bundy with her own funds and claimed by her in her own right. Certain other furniture was purchased by Mr. Bundy and given to his wife as a gift. The purchase of other furniture from his own funds, when viewed in the light of purchases by Mrs. Bundy and gifts to her from the decedent, suggest that the title to the furniture purchased by Mr. Bundy was taken by him and that he might dispose of it during his lifetime without the consent of his spouse. Respondent, however, contends that the furniture should go to Mrs. Bundy as part of the homestead property under U. C. A. 1943, Sec. 101-4-6. This point was not raised below. It is

inapplicable until title to the furniture is determined; furthermore, U. C. A. 1943, Sec. 101-4-8, requires the value of the exempt property to be deducted from the distributive share of the claimant. This was not done.

Appellants' third assignment of error is in regard to the court ruling excluding appellant John A. Bundy from any further participation in the distribution of the estate. This was done upon the trial court's own motion after an examination of John A. Bundy prompted by an accidental overhearing by the court that John A. Bundy had sold items belonging to the partnership and had not accounted for the proceeds. The examination disclosed that John A. Bundy had collected money and failed to account for it and that he had dissipated some partnership assets, the proceeds of which should have gone into the estate. There was no evidence, however, as to the amounts so collected or dissipated or converted. Neither respondent nor the other appellant wanted John A. Bundy to lose his patrimony, but the court concluded that the amounts converted at least equaled the amount otherwise distributable to him from the estate. This conclusion was reached despite the fact that counsel for respondent stated in effect that he had no evidence to present to prove that Bundy was further indebted to the partnership or the estate. The fact, if it be a fact, that John Bundy kept no record and destroyed those that existed, would justify employing against him the most rigid rules of calculation. If he kept no records of what he received and spent, he should be required to produce other convincing evidence of the propriety and amount of his expenditures. He was a fiduciary and must account for the assets left in his trust. The Court, however, has gone too far in deciding that John A. Bundy has already received his patrimony. The only evidence to support such conclusion is the hearsay overheard by the court, and the admissions of Bundy which are vague and uncertain. Even of Bundy's admissions be accepted, the value of the goods admittedly appropriated does not equal the value of the

estate still subject to distribution to him. Hence, we conclude that the finding and decree of the lower court should be reversed on this isue, and we direct that John A. Bundy should receive one-third of the residue of the estate less those advancements to him shown by the administratrix' accounts, also less his collections and conversions not accounted for as shown by the evidence.

Appellant further objects that compensation to the administratrix was not properly allowed. This point was not in the original objections, but when the question of a waiver of the compensation arose on trial the appellant tendered evidence of a waiver which was stricken because no issue on waiver had been pleaded. The evidence tendered consisted only of the testimony of one of the appellants to the effect that something had been said concerning compensation, and that appellants thought respondent had said she would take no fee although there was some indication in an invalid will of deceased that the executors were to have $100 as a fee. The court concluded that respondent was entitled to compensation as administratrix and fixed the same in accordance with 102-11-25, U. C. A. 1943. Appellants contend their amendment should have been allowed and their proffered evidence should have been received under Rule 15(b), U. R. C. P., which provides that a court may allow the pleadings to be amended where the presentation of the merits of the action will be subserved thereby. Whether the court will allow amendments of the pleadings under Rule 15(b) is a matter which is in the sound discretion with that court. In this case, the record shows the added responsibility of the administratrix in the dissolution of the partnership and the stricken evidence of a waiver by the administratrix of her compensation is the vague testimony of the appellant, Dora B. Goddard. Whether allowing the amendment would subserve presentation of the merits of the cause was a question which called for appraisement by the trial court.

We agree with appellants' contention that fraud, wilful default, gross negligence, or misconduct in administration of the estate will warrant a deprivation of statutory commission to an administratrix. The record here may indicate that the estate could have been handled in a more prudent manner, but there is no indication of any misconduct as of such negligence on the part of administratrix as would justify denial of the compensation provided by statute.

Appellants' fifth assignment of error is that respondent should have been charged $450 for a 10-foot strip of land instead of $100. It appears from the record that respondent, in trying to partition the estate, stated that she would agree to being charged $450 for this strip which was adjacent to her home. The strip was appraised by the estate appraisers at $100. No partition agreement was reached, however, and the court charged respondent with only $100, the value as determined by appraisers duly appointed for such purpose. There is nothing in the record to show that an agreement was reached on the $450 figure, or that there was a reliance on such figure by appellants resulting in injury to them, but rather that the $450 figure was a proposed figure under a proposed partition which never was accepted by all parties nor carried out by them. In view of these facts, there was no error in the lower court's determination at the appraised value.

Appellants' last contention is that the lower court erred in denying appellants' motion for leave to file out of time their motion to amend findings and decree and their motion for a new trial. The findings of fact and conclusions of law and decree of final distribution were served and filed May 22, 1950. Appellants' counsel was out of town and received no notice or copy of the findings from the Court Clerk who evidently failed to mail such notice and findings even to counsel's local office. Appellants now contend that under these facts they should be relieved of their default and permitted to file their mo-

tions for amendment and for a new trial under the provisions of Rule 60(b), U. R. C. P., which allows relief from a final judgment, order or proceedings for

"* * * (1) mistake, inadvertence, surprise, or excusable neglect."

This contention is not sound. Under Rule 58A(c) a judgment is complete and is deemed entered for all purposes when the same is signed and filed, not when notice is received by the parties. Rule 52(b) says:

"Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings * * *."

Rule 59(b) says:

"A motion for a new trial shall be served not later than 10 days after the entry of the judgment."

Although this is not a question of enlargement of time, Rule 6(b) specifically limits the time within which relief may be entered under the invoked rules when it says a court

"may not extend the time for taking any action under Rules * * * 52(b), 59(b) * * * 60(b) * * * except to the extent and under the conditions stated in them."

Appellants had 10 days in which to make their motions. Their failure to do so was not the fault of the court or its clerk. We are supported in this position by numerous cases decided under Rule 52(b) by the Federal courts in their interpretation of the Federal Rules of Procedure, 28 U. S. C. A., from which the Utah Rules were adapted. See for example: *Walling* v. *Todd*, motion denied D. C., 3 F. R. D. 490; *Columbia River Packers Ass'n* v. *Hinton*, D. C., 34 F. Supp. 970, reversed on other grounds 9 Cir., 117 F. 2d 310 and 315 U. S. 143, 62 S. Ct. 520, 86 L. Ed. 750.

The case is reversed and remanded with instructions to proceed in accordance with the opinions expressed herein. No costs are awarded.

WOLFE, C. J., and WADE and CROCKETT, JJ., concur.
HENRIOD, J., not participating.