[Civ. No. 47652. First Dist., Div. Two. Mar. 6, 1980.]

Estate of ALFREDO VANNUCCI, Deceased.
ANITA BORAGNO, as Executrix, etc., Petitioner and Respondent, v.
AMELIA VANNUCCI, Objector and Appellant.

COUNSEL

Ralph Irby White for Objector and Appellant.

F. Campagnoli and Miller, Katz & Harlem for Petitioner and Respondent.

OPINION

ROUSE, J.—Amelia Vannucci, the widow of Alfredo Vannucci, appeals from those portions of a probate court order which affect her right to a widow's allowance and a probate homestead.

Alfredo Vannucci died in May 1972, survived by his widow, Amelia, and two daughters and four grandchildren. Alfredo and Amelia had been married for 12 years. On the date of their marriage, Alfredo was already retired and living on the income from his separate property. There was, therefore, no community property of the marriage. However, Alfredo and Amelia did purchase a building containing two flats, initially taking title as joint tenants. Shortly thereafter, Alfredo converted the ownership to a tenancy in common by deeding his one-half interest to a third party who then deeded the interest back to Alfredo. Alfredo and Amelia lived in one of the two flats during their marriage.

Alfredo died testate, leaving an estate valued at an amount in excess of $400,000. He bequeathed to his widow household furnishings worth $400 and the sum of $5,000. His will specified that the $5,000 bequest should be reduced by any family allowance paid to Amelia.

On June 19, 1972, Alfredo's will was admitted to probate, and one of his daughters, Anita Boragno, was appointed executrix.

On October 2, 1972, pursuant to a stipulation between the widow and the executrix, it was ordered that Amelia receive a family allowance of $507.79 per month until further order of the court.

On December 1, 1972, the widow filed a petition for an order setting apart as a probate homestead the building which she and the decedent had owned as tenants in common. This petition was granted on June 29, 1973, and it was ordered that the widow have a probate homestead in the property in question for a period of 12 years or until her death, whichever event occurred first. The order stated that the allocation of costs, maintenance, repairs and taxes would be determined when the petition for distribution was filed.

On April 3, 1974, the executrix filed her first and final account and a petition for its settlement and for final distribution. On April 18, 1974, an order settling the executrix' first and final account and directing final distribution under the will was rendered. This order provided that during the twelve-year duration of the widow's probate homestead, she would be entitled to occupy one of the two flats rent free and that the rental from the remaining unit would be paid to the heirs of the decedent to whom he had devised his undivided one-half interest in the property. All expenses of maintenance, insurance, repairs and taxes on the property and improvements were to be borne one-half by the widow and one-half by the devisees of the property.

The widow filed a notice of appeal from certain portions of the order of April 18, 1974, including those portions affecting her widow's allowance and probate homestead. However, this appeal was never decided. On April 28, 1976, after the widow had filed her opening brief, she and the executrix entered into a written stipulation that those portions of the April 18th order which affected the widow's allowance and probate homestead would be remanded to the superior court for further hearing. In accordance with such stipulation, this court ordered the case remanded to the superior court for further hearing. The hearing took place before a probate commissioner on November 19, 1976.

On December 17, 1976, the executrix filed a petition to modify by terminating the widow's allowance on the ground that the estate had been distributed on April 18, 1974. The widow filed an objection to this petition and alleged that although her allowance had never been terminated by order of court, the executrix had ceased to pay it in May 1974. The widow asserted that the allowance should remain in effect

because the order distributing the estate was still not final due to her appeal and the subsequent stipulation that the cause be remanded for further hearing. Also, she alleged that her financial situation was such that it was necessary for her to borrow and seek the charity of her daughter and son-in-law in order to exist.

The probate commissioner who had presided at the November 19th hearing filed his report on June 2, 1977. He was of the opinion that the widow's allowance had terminated when the estate was distributed in 1974 and that a different rule should not apply merely because the widow had appealed from the order of distribution. As for the widow's probate homestead, the commissioner concluded that there was no case law directly in point, but that the fairest manner of allocating expenses and profits would be for the widow to receive the rent from the flat which she was not occupying and to pay the taxes, maintenance and interest on the mortgage and one-half of the principal payments on the mortgage.

The executrix moved for adoption of the commissioner's report and for the entry of judgment. Following the filing of points and authorities by both parties, the court rendered findings of fact and conclusions of law which were generally in accordance with the commissioner's recommendations. The court determined that the widow's allowance had terminated on April 18, 1974, when the estate was distributed. The court also determined that during the life of the probate homestead, the widow would receive the rental income from the flat which she was not occupying and would be obligated to pay all taxes and assessments on the building and real property, all costs of insurance and maintenance and one-half of the principal and interest on the mortgage. The devisees of the property were to pay the other one-half of the principal and interest on the mortgage.

On July 25, 1977, an order was entered amending the order of April 18, 1974, to add a provision terminating the widow's allowance as of April 18, 1974, and requiring that the income and expenses of the probate homestead be allocated as set forth above. The widow filed a timely notice of appeal from this order, insofar as it affected her widow's allowance and probate homestead.

The widow's first contention on appeal is that the court improperly required her to pay such a large portion of the expenses connected with the probate homestead as to prevent her from receiving any benefit

from such homestead. She asserts that during the three-year period between May 1974 and May 1977, the annual rental income from the flat not occupied by her was $9,050, interest on the mortgage was $4,836 per year, principal on the mortgage was $5,885.02 per year, real property taxes were $7,540.44 per year, and insurance on the building was $686 per year. The widow concludes that even without taking maintenance and utilities into account, the creation of the probate homestead had the effect of giving her a net loss of $9,897.46 per year. She asserts that this result is directly contrary to the rule that homestead legislation must be liberally construed because its purpose is "to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors." (*Estate of Fath* (1901) 132 Cal. 609, 613 [64 P. 995]; to the same effect, see *Estate of Kachigian* (1942) 20 Cal.2d 787, 791 [128 P.2d 865].)

The widow's analysis of the figures is somewhat misleading. She and the decedent owned the two-unit apartment building as tenants in common. Thus, even prior to the creation of the probate homestead, the widow owned an undivided one-half interest in the land and building as her separate property and was responsible for one-half the expenses connected therewith and entitled to share in one-half the profits therefrom. Since, at all relevant times, the widow has resided in one of the two flats and intends to continue to do so, the rent from the other flat would have gone to the decedent's devisees following his death, while the widow would have remained liable for one-half the expenses connected with the land and building. Thus, had no probate homestead been created, the situation would have been one where the widow could have occupied one of the two flats in return for paying $2,418 per year in interest on the mortgage, $2,942.51 per year in principal on the mortgage, $3,770.22 per year in real property taxes, and $343 per year in insurance. Thus, the widow's yearly expenses, excluding maintenance and utilities, would have amounted to $9,473.73, and she would have received no share of the rental income from the flat which she was not occupying.

When the court declared a probate homestead on the one-half interest which the decedent had devised to his heirs,[1] the widow's position

---

[1]Although the trial court's order is somewhat unclear and appears to refer to a probate homestead on the entire two-unit building and land, it is evident that, since the

was altered in the following manner: since the court ordered that the devisees of the property were required to pay only one-half of the principal and interest on the mortgage and that the widow was required to pay all real property taxes and insurance, her yearly expenses, excluding maintenance and utilities, increased by the sum of $4,113.22 (i.e., one-half the annual cost of real property taxes and insurance). However, the court also ordered that the widow receive the rental income from the flat which she was not occupying, totaling $9,050. Thus, the creation of the probate homestead gave the widow a net benefit of $4,936.78 per year.

The widow has not cited, nor has research disclosed, any authority in support of her contention that the trial court abused its discretion in failing to require the testator's devisees to pay a greater share of the expenses connected with the probate homestead. She cites *Estate of Taylor* (1936) 12 Cal.App.2d 374 [55 P.2d 537], for the proposition that it is equitable for a court to order the estate to pay off the entire mortgage on property set aside as a probate homestead. While it is true that the trial court in the *Taylor* case did make such an order, the propriety of that order was not questioned on appeal. The sole issue was whether the trial court had abused its discretion in terminating the widow's allowance.

In the early case of *Schadt* v. *Heppe* (1873) 45 Cal. 433, the California Supreme Court held that the plaintiff, who was the holder of a note and deed of trust on property which had been set apart as a probate homestead for the widow and her child, was not required to file a claim against the estate prior to seeking foreclosure of the mortgage. The court held that, when the property was set apart as a probate homestead, the widow and child henceforth held it subject to the mortgage but free from all other claims against the estate. The court stated, "For the purposes of a mere foreclosure, therefore, the administrator was no longer a necessary or proper party to the action. Nothing being claimed against the estate, it was a matter of no concern to him whether the mortgage should be foreclosed or not." (P. 437.)

In *Morrison* v. *Barham* (1960) 184 Cal.App.2d 267 [7 Cal.Rptr. 442], the question before the court was whether a former wife who, by

---

widow already owned an undivided one-half interest in the building and land as her separate property, the probate homestead was imposed only upon the decedent's undivided one-half interest in said property. (*Estate of Adams* (1964) 228 Cal.App.2d 264, 266 [39 Cal.Rptr. 522].)

a decree of divorce, had been assigned a homestead for life, was obligated to pay the taxes on the property assigned as a homestead. The court discussed at length the attributes of such a homestead and concluded that it most closely resembled an estate for life, where the owner has all the duties and obligations incident to the ownership, enjoyment and profit from the land. (Pp. 273, 275.) The court held that the wife was liable for the taxes on the property and stated that it was reasonable to infer that the income yielded by the property was sufficient to cover the taxes. (P. 275.) The court also observed that it was the wife's duty to so maintain the property that it would not pass to the owner of the underlying title permanently reduced in value. (P. 275.)

■ Assuming, arguendo, that, in this instance, the trial court was empowered to require the decedent's devisees to pay a greater share of the expenses connected with the probate homestead, the question before us is whether the court's refusal to do so constituted an abuse of discretion. We conclude that it did not. As we have previously pointed out, the creation of the probate homestead resulted in a substantial monetary benefit to the widow. Also, it is reasonable to assume that this benefit will increase over the 12-year term of the homestead. Thus, the record reveals that the monthly rent on the flat not occupied by the widow was $250 as of March 1, 1973 and had risen to $350 per month by June 1977. The trial court ordered that this rental income be paid to the widow during the duration of the homestead, but that the heirs to whom the decedent had devised his one-half interest in the building and land would be liable for one-half of the principal and interest payments on the mortgage covering the entire building and land. Since the heirs will derive no monetary benefit from the property during the life of the homestead, it cannot be said that the trial court abused its discretion by refusing to impose a greater financial burden upon the heirs during the life of the homestead.

■ The widow's second and final contention is that the trial court erred in determining that her allowance had terminated as of the rendition of the final decree of distribution on April 18, 1974. She correctly points out that the widow's allowance was granted by an order, dated October 2, 1972, which described the allowance as "commencing May 26, 1972, and continuing until further order of the court." She argues that since the order of April 18, 1974, which directed distribution of the estate, did not expressly terminate the widow's allowance, it remained in effect under the terms of the prior order. She also asserts that a widow's allowance is not terminated by a decree of distribution where,

as here, an appeal is taken from such decree. Finally, she contends that the court lacked the authority to order that the widow's allowance was retroactively terminated as of April 18, 1974. She claims that the earliest date upon which the allowance could be terminated was December 17, 1977, when the executrix filed her petition to modify the allowance.

The right to a widow's allowance is created by section 680 of the Probate Code, which provides for such an allowance "during the progress of the settlement of the estate." In *Estate of Sayre* (1931) 114 Cal. App. 649 [300 P. 833], it was contended on appeal that the trial court was without authority to order the termination of the widow's allowance because no notice had been given that such an order would be made. The appellate court rejected this argument and concluded that the widow was entitled to the allowance only for such time as was reasonably necessary to settle the estate. (Pp. 652-653.) The court held that it was sufficient that the widow had been given notice of the final account and the petition for distribution, since "[p]resumptively appellant knew that the family allowance would cease with the distribution of the estate . . . ." (P. 653.)

Here, the widow cites *Estate of Dow* (1957) 48 Cal.2d 649 [312 P.2d 1], for the proposition that a widow's allowance is not terminated by a final decree of distribution when an appeal is taken from such decree. However, that case differs markedly from the instant case. In *Dow*, the decedent's widow and daughter were his two beneficiaries. The widow's allowance was initially ordered terminated, based upon findings that the estate was ready to be closed immediately. (Pp. 651-652.) When the widow, as administratrix, thereafter applied for and obtained a final decree of distribution, the daughter promptly appealed. The trial court then ordered the widow's allowance reinstated pending the resolution of the appeal. The California Supreme Court held that this order was proper, since the daughter's appeal was depriving the widow of her distributive share of the estate and she had no funds of her own with which to support and maintain herself while the appeal was pending. (Pp. 651, 653-654.) The court also noted that the order reinstating the widow's allowance was in no way inconsistent with the final decree of distribution because said decree specifically provided for further proceedings, including the payment of all obligations of the estate and the filing of a supplemental account. (Pp. 653-654.)

In this case, the final decree of distribution did not provide for any further proceedings, and it expressly stated that all debts, expenses and

claims against the estate had been paid. Thus, the granting of a widow's allowance as an additional claim against the estate would have been inconsistent with the decree of distribution. Also, the situation here is not one where the filing of an appeal by a third party was preventing the widow from receiving her distributive share of the estate. In this case, the widow has received all that she is entitled to receive from the estate;[2] also, it was she who took an appeal from the decree of distribution. In *Estate of Dow, supra*, 48 Cal.2d 649, the court indicated that continuing a widow's allowance would be improper where it was the widow herself who was prosecuting an appeal for the purpose of prolonging the administration of the estate and obtaining a further family allowance while the appeal was pending. (P. 653.) Under the circumstances, we cannot agree with the widow that her allowance should have continued beyond the date when the final decree of distribution was rendered.

In support of her argument that the trial court was not authorized to terminate her allowance retroactively as of the date of the decree of distribution, the widow relies upon *Estate of Murphy* (1964) 225 Cal. App.2d 224, 235 [37 Cal.Rptr. 205], and *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 641-642 [29 Cal.Rptr. 60]. Both cases state that the court possesses the right to retroactively modify or terminate a family allowance as of the date the application for modification was filed or at least as of the date of service of the notice of motion for modification. Such language suggests that it would be improper for the court to retroactively terminate a widow's allowance as of an earlier date.

However, it is also the rule that an order terminating a widow's allowance will not be disturbed on appeal absent a showing of an abuse of discretion. (*Estate of Updegraph* (1962) 199 Cal.App.2d 419, 425 [18 Cal.Rptr. 591].) In this case, counsel for the widow stated at a hearing held on February 26, 1973, that "we all know when the probate is closed that our right to get the family allowance ceases, and it is gone, . . ." The record also reveals that the executrix ceased paying the widow's allowance immediately after the rendition of the final decree of distribution in April 1974, and that, over two and one-half years later, at a hearing held on November 19, 1976, counsel for the executrix

---

[2]Under the terms of the will, the $5,000 bequest to the widow was to be reduced by any family allowance paid to her. As of the hearing held on February 26, 1973, the widow had already received a family allowance equal to or in excess of the $5,000 bequest.

pointed out that the widow had never filed an application for reinstatement of the allowance after payment had ceased.

In this instance, it appears that the widow knew her allowance would terminate with the decree of distribution and took no steps to have it reinstated when the payments ceased. In view of the additional fact that it was the widow, and not the executrix, who delayed the closing of the estate by appealing from the final decree of distribution, we decline to hold that the trial court abused its discretion in terminating the widow's allowance as of the date of the decree of distribution.

The order is affirmed.

Taylor, P. J., and Miller, J., concurred.